UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PALETERIA LA MICHOACANA, INC. *et al.*, : | |
| : | |
| Plaintiffs & Counter-Defendants, : | Civil Action No.:   11-1623 (RC) |
| : | |
| v.   : | Re Document Nos.:   70, 72, 75 |
| : | |
| PRODUCTOS LACTEOS TOCUMBO S.A. : | |
| DE C.V.,   : | |
| : | |
| Defendant & Counter-Claimant.  : | |

**MEMORANDUM OPINION**

**DENYING PROLACTO'S MOTION FOR A PROTECTIVE ORDER;
GRANTING PROLACTO'S MOTION TO SEAL;
OVERRULING AS MOOT PLM'S OBJECTIONS TO EVIDENCE**

**I.  INTRODUCTION**

The parties in this matter claim the exclusive right to use various trademarks in connection with the sale of their food products, including ice cream and fruit popsicles, in the United States.  The defendant and counter-claimant now seeks a protective order requiring that the deposition of its corporate designees take place in or near Mexico City, Mexico.  Alternatively, the defendant and counter-claimant seeks an order requiring that the plaintiffs and counter-defendants pay for the corporate designees' travel, lodging, and per diem expenses if the deposition goes forward in the United States.  Because the defendant and counter-claimant has not shown that deposition of its corporate designees in the United States will be unduly burdensome, the Court will deny its motion.

## II.  FACTUAL BACKGROUND

The plaintiffs and counter-defendants, Paleteria La Michoacana, Inc. and Paleteria La Michoacana, LLC (collectively, "PLM"), are closely related companies that produce and distribute ice cream bars known as "paletas."  The defendant and counter-claimant, Productos Lacteos Tocumbo S.A. de C.V. ("Prolacto"), is a Mexican company that operates in the same industry.  This trademark dispute began in 2007, when Prolacto initiated a proceeding in the United States Patent and Trademark Office ("USPTO") seeking cancellation of certain trademarks registered by PLM.  *See* 2d Am. Compl. (Dkt. No. 40) ¶ 29.  In 2011, the Trademark Trial and Appeal Board ("TTAB") granted Prolacto's petition and denied PLM's later request for reconsideration of the cancellation.  *See id.* Exs. A–B (Dkt. Nos. 40-1 to 40-2).

In September 2011, PLM filed a civil action in this Court seeking judicial review of the TTAB's cancellation and asserting several other causes of action.  *See* Compl. (Dkt. No. 1).  Despite its success before the USPTO, Prolacto's operative pleading in this case includes a cross-appeal of certain TTAB findings adverse to Prolacto.  *See* Answer 2d Am. Compl. & Countercls. (Dkt. No. 41) at 16–29.  Prolacto also asserts seven affirmative counterclaims against PLM under both federal and D.C. law.  *See id.* at 29–43.

Discovery in this case has been underway since June 2012.  On February 28, 2013, PLM noticed the deposition of Prolacto pursuant to Federal Rule of Civil Procedure 30(b)(6).  *See* Mot. Prot. Order Ex. A (Dkt. No. 70-2).  PLM's notice sets Washington, D.C. as the location of the deposition, but the notice included a cover letter indicating that PLM is "amenable to working with [Prolacto] if there is a different location in the United States that is more convenient."  *See* Liou Decl. Ex. E (Dkt. No. 71-6).  Prolacto insisted that the deposition take place in Mexico City, where Prolacto is headquartered and the deponents reside.  *See id.* Ex. F

(Dkt. No. 71-7). After the parties' further correspondence failed to resolve the location issue, Prolacto moved for a protective order requiring that its corporate designees be deposed in Mexico City or, alternatively, that PLM pay for all of the transportation, lodging, and per diem expenses associated with a deposition of Prolacto's designees in the United States. *See* Mot. Prot. Order (Dkt. No. 70). PLM opposed the motion. *See* Opp'n Mot. Prot. Order (Dkt. No. 71). Prolacto filed a reply brief and supporting declaration, which it seeks to have sealed in part. *See* Mot. Seal (Dkt. No. 72). PLM objects to Prolacto's introduction of new evidence on reply and, in the alternative, seeks leave to file a sur-reply. *See* Obj. Evid. Reply (Dkt. No. 75).

### III. PROLACTO'S MOTION FOR A PROTECTIVE ORDER

#### A. Legal Standard

A party served with a notice of deposition may move for a protective order pursuant to Federal Rule of Civil Procedure 26(c):

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

Fed. R. Civ. P. 26(c)(1). Rule 26(c) empowers the Court to "specify[] terms, including time and place, for the disclosure or discovery" at issue upon a showing of good cause. *Id.* at 26(c)(1)(B). The burden of showing good cause falls upon the party moving for the protective order. *See United States v. Kellogg Brown & Root Servs., Inc.*, 285 F.R.D. 133, 134 (D.D.C. 2012). "In considering where the deposition of a corporate agent is to take place, there is a general presumption that the deposition will occur at the corporation's principal place of business.

However, this presumption is rebuttable and the Court can focus on several factors to determine if it would be inappropriate to have the deposition at the foreign defendant corporation's principal place of business." *Rundquist v. Vapiano SE*, 277 F.R.D. 205, 212 (D.D.C. 2011) (citations omitted). "The matter of the location of depositions of defendants ultimately is within the discretion of the Court, and instances of defendants having to appear for depositions at the place of trial are not unusual." *Fin. Gen. Bankshares, Inc. v. Lance*, 80 F.R.D. 22, 23 (D.D.C. 1978).

When determining whether it is appropriate to override this general presumption, courts consider the following factors: "location of counsel for both parties; size of defendant corporation and regularity of executive travel; resolution of discovery disputes by the forum court; and the nature of the claim and the relationship of the parties." *Nat'l Cmty. Reinv. Coal. v. NovaStar Fin., Inc.*, 604 F. Supp. 2d 26, 31 (D.D.C. 2009). These factors are not exhaustive, and when the proposed deposition involves foreign nationals courts have also considered such factors as the legal impediments to holding a deposition in the foreign nation and the potential affront to that nation's sovereignty. *See, e.g.*, *McKesson v. Islamic Republic of Iran*, 185 F.R.D. 70, 81 (D.D.C. 1999) (sovereignty); *In re Honda Am. Motor Co. Dealership Relations Litig.*, 168 F.R.D. 535, 540 (D. Md. 1996) (legal impediments).

## B.  Analysis

It is uncontested that all lead counsel in this matter are located in California. But Prolacto argues that the burden of having each party send one attorney to Mexico City is outweighed by the burden of requiring that multiple witnesses travel to the United States. Prolacto's argument ignores the possibility that PLM may wish to apportion the questioning by deposition topic between two or more of its attorneys. Prolacto provides neither case law nor

logical support for its conclusory assertion that the location of counsel factor "should not be given much weight with respect to this motion." *See* Mem. Supp. Mot. Prot. Order. (Dkt. No. 70-1) at 7. The Court agrees with PLM that this factor weighs in favor of holding the deposition in California.

The next factor is the deponent's size and frequency of executive travel. PLM argues that, because Prolacto is large enough to have expanded into the United States and sends its officers to the United States at least occasionally, Prolacto can and should bring its designees here for deposition. Prolacto counters that it is considerably smaller than PLM. Prolacto frames this issue in terms of which party is in a *better* position to bear the costs, but the proper inquiry is whether *Prolacto* is unduly burdened by appearing for deposition in the United States. Prolacto has submitted an approximation of its gross revenues for 2012. *See* Malfavon Decl. (Dkt. No. 74-1) ¶ 15. But even if the Court were to consider this information, offered for the first time on reply, it provides an insufficient financial picture to determine the burden a United States deposition would impose on Prolacto. The record contains no information regarding Prolacto's net worth or the operating costs that offset its gross revenues. Prolacto argues that it runs a small operation, but its insistence that it may need to designate up to seven witnesses to cover the noticed deposition topics belies that argument. Moreover, PLM has presented evidence that Prolacto has taken steps to expand its direct operations into the United States and sends its officers to visit its United States licensees at least a few times per year. *See* Liou Decl. Ex. B (Dkt. No. 71-3) at 19; *id.* Ex. M (Dkt. No. 71-14) at 21; *id.* Ex. N (Dkt. No. 71-15) at 6–7.

Prolacto's business is expanding into, and its officers visit, the United States when it suits Prolacto. So, this factor favors Prolacto's appearance in the United States.[1]

The Court next considers its ability to oversee the deposition. Prolacto argues that the Court's ability to supervise the deposition and resolve discovery disputes will not be hindered if the deposition occurs in Mexico City. PLM disagrees and says that the Court's jurisdiction will be weakened if Prolacto's agents are deposed in Mexico. Because Prolacto is willing to offer its witnesses voluntarily and hold the deposition under the Federal Rules of Civil Procedure—rather than under Mexican law pursuant to the Hague Convention—the Court does not find that this factor favors overriding the general presumption that corporate defendants be deposed at their principal place of business. Regarding the Court's ability to supervise the deposition as a logistical matter, Prolacto is correct (and PLM does not appear to dispute) that the Court would be able to resolve any discovery dispute telephonically regardless of the one-hour time difference between Mexico City and Washington, D.C. *See also Nat'l Cmty. Reinv. Coal.*, 604 F. Supp. 2d at 32 ("Most discovery disputes could be resolved by telephone regardless of the deposition location (in the unlikely event the Court needed to get involved at all); the convenience of being within the forum is an insufficient reason to modify the ordinary rule.").

The parties are in strong disagreement over the nature of this action and the parties' relationship. PLM argues that Prolacto originally initiated the cancellation proceeding in the USPTO and should be viewed as the true "plaintiff" to this action. In support of its proposition that it is the "defendant" here, Prolacto points out that PLM filed the complaint in this Court. But in order to preserve its right of judicial review, PLM was required to file the instant lawsuit

---

[1] While Prolacto's reply raises the issue—absent from its opening brief—that not all of its designees are eligible for United States visas, Prolacto does not contend that it will be unable to produce at least one witness in the United States on every noticed topic for deposition.

before this Court within sixty days of the TTAB ruling. *See* 15 U.S.C. § 1071(b).[2] Although PLM is nominally the "plaintiff and counter-defendant" on the case caption, it is Prolacto who initiated the overall legal dispute here. Moreover, Prolacto has elected to cross-appeal to this Court for further review of the TTAB's findings, as well as assert stand-alone causes of action under federal law and D.C. common law. Thus, Prolacto has availed itself of not only United States law, but of District of Columbia law. A party that chooses to initiate litigation and invoke the legal protections of the forum should expect to appear for deposition in that jurisdiction. *See Cobell v. Norton*, 213 F.R.D. 43, 47 (D.D.C. 2003) (holding that an elderly named representative class member failed to present sufficient evidence that his health problems require holding his deposition in Montana rather than Washington, D.C.); *see also Dollar Sys., Inc. v. Tomlin*, 102 F.R.D. 93, 94 (M.D. Tenn. 1984) ("[A]ccording to another general rule, the plaintiff will not be heard to complain about having to appear in the forum-district for the taking of its deposition, since it selected that forum in the first instance."). Because Prolacto initiated litigation in the United States and asserts additional affirmative federal and D.C. causes of action before this Court, the nature of this action and the relationship of the parties strongly favors a United States deposition of Prolacto.

Because Prolacto is a foreign entity, the Court also considers factors relating to the role of foreign and international law. PLM argues that, should the deposition be required to go forward in Mexico City, this case will be delayed by legal impediments under the Hague Convention and Mexican law, including the procedure for obtaining authorization to hold a deposition abroad, the need to translate case documents and submit them to a Mexican court, and the possibility that

---

[2] While 15 U.S.C. § 1071(b)(4) required that civil action be brought in the District of Columbia when the instant lawsuit was filed, it has since been amended to require that complaints be filed in the Eastern District of Virginia.

a Mexican court may dismiss deposition questions it finds objectionable or direct its own questions to the witness. *See* Mem. Opp'n Mot. Prot. Order (Dkt. No. 71) at 13; Navarro Decl. (Dkt. No. 71-16) ¶¶ 3–5. This argument is erroneous, as the Hague Convention is a permissive, not exclusive, discovery tool. *See Société Nationale Industrielle Aérospatiale v. U.S. District Court*, 482 U.S. 522, 533–36 (1987). The witnesses in this case are willing to be deposed in Mexico under United States law, and so a deposition under the Federal Rules of Civil Procedure is available as a less burdensome alternative to a deposition under Mexican law pursuant to the Hague Convention. *See* Fed. R. Civ. P. 28(b); *United States ex rel. Barko v. Halliburton Co.*, 270 F.R.D. 26, 29 (D.D.C. 2010) ("[T]he instant case does not involve a foreign jurisdiction in which the taking of a deposition pursuant to the Federal Rules was barred by the law of the foreign country."). *Compare* U.S. Dep't of State, *Mexico Judicial Assistance*, http://travel.state.gov/law/judicial/judicial_677.html (last visited May 1, 2013) (stating that Mexico, a signatory to the Hague Convention, allows voluntary depositions provided no compulsion is used), *with* U.S. Dep't of State, *France Judicial Assistance*, http://travel.state.gov/law/judicial/judicial_647.html (last visited May 1, 2013) (noting that France requires compliance with the Hague Convention for any deposition of a French citizen or third country national). PLM has not shown that this alternative violates any Mexican law. The Court is not convinced that Mexican or international law presents a significant impediment to holding the deposition abroad in this case. Because the parties have not shown that Mexican law forbids the taking of depositions pursuant to the Federal Rules of Civil Procedure on Mexican soil, the "affront to sovereignty" factor is neutral.

Although the factors do not lean universally in favor of one party, the Court finds that, on balance, they favor holding the deposition in the United States. This litigation started with

Prolacto's petition in the USPTO, counsel for all parties are located in California, and Prolacto has taken advantage of the United States market and its laws. However, due to the location of counsel and the distance from Mexico City, the Court finds that Southern California—not Washington, D.C.—may be the most sensible location for the deposition. But the Court leaves it to the parties, hopefully acting reasonably, to agree to the appropriate location within the United States.

Prolacto alternatively seeks an order requiring that PLM pay for the all of its designees' transportation, lodging, and per diem expenses associated with their deposition in the United States. As noted above, Prolacto chose to initiate legal action against PLM in the USPTO and has availed itself of the protections of United States and D.C. law in this Court. Prolacto fails to cite any case in which a party that asserted affirmative claims—let alone initiated legal action—in a forum was entitled to reimbursement for deposition-related travel to that forum. Moreover, because Prolacto can educate its witnesses pursuant to Federal Rule of Civil Procedure 30(b)(6), it is largely in control of how many witnesses need to be brought to the United States. Therefore, it is in a position to control its costs and the disruption the depositions will impose on its business.[3] The Court will deny Prolacto's request for expenses.

---

[3] For some unknown reason, Prolacto has refused to identify the witnesses it intends to designate pursuant to Rule 30(b)(6). Whether or not the Rules require such advance designation, the Court expects parties to cooperate in order to avoid unnecessary re-deposition of the same individuals as fact witnesses. *See generally* Fed. R. Civ. P. 1 (the Rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding"). Accordingly, within two weeks of this opinion, Prolacto must identify the individuals it has designated to testify pursuant to Rule 30(b)(6) and the topics on which each witness has been designated.

## IV. PROLACTO'S MOTION TO SEAL

Prolacto moves to seal portions of its memorandum in reply, portions of the Declaration of Guillermo Andrade Malfavon, and Exhibit A to the Declaration of Stephen Anderson, on the basis that these documents include the parties' sensitive financial data.  *See* Mot. Seal (Dkt. No. 72).  Such information is commonly sealed in federal civil litigation.  *See, e.g.*, *King v. E.F. Hutton & Co.*, 117 F.R.D. 2, 12 (D.D.C. 1987) (recommendation of Magistrate Judge to seal confidential commercial or financial data).  However, the Court notes that Prolacto's motion does not contain a statement confirming that the parties met and conferred and indicating whether the motion is opposed.  The Court will grant Prolacto's motion, but reminds the parties that such a statement is required for future non-dispositive motions in this Court.  *See* Local Civ. R. 7(m).

## V. PLM'S OBJECTIONS TO EVIDENCE OFFERED IN REPLY

PLM objects to the additional financial data Prolacto submits in reply and requests, in the alternative, leave to file a sur-reply.  *See* Obj. Evid. Reply (Dkt. No. 75).  Prolacto responds that it did not have access to PLM's figures when it filed its motion, but does not even address its failure to provide Prolacto's *own* financial data in support of its opening brief.  As the party seeking a protective order on the basis that PLM's deposition notice presents an undue financial burden, Prolacto should have included this evidence with its opening brief.  *See, e.g.*, *Holiday CVS, L.L.C. v. Holder*, 839 F. Supp. 2d 145, 171 n.16 (D.D.C. 2012) (declining to consider new evidence and legal arguments raised for the first time on reply).  However, because the Court disposes of Prolacto's motion in favor of PLM irrespective of whether it formally considers Prolacto's reply evidence, the Court will overrule as moot PLM's objections and deny as moot its request for leave to file a sur-reply.

## VI.  CONCLUSION

For the foregoing reasons, the Court denies Prolacto's motion for a protective order (Dkt. No. 70), grants Prolacto's motion to seal (Dkt. No. 72), and overrules as moot PLM's objections to evidence (Dkt. No. 75).  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this first day of May, 2013.

In addition, before bringing a discovery dispute to the Court's attention, the parties shall confer in good faith in an attempt to resolve the dispute informally.  Going forward, if the parties are unable to resolve the dispute, they must contact chambers to arrange for a telephonic conference with the Court.  The parties must obtain leave of the Court before filing any motion relating to a discovery dispute.  Any discovery motions that are filed prior to obtaining such leave may be summarily denied.

RUDOLPH CONTRERAS
United States District Judge