## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| PALETERIA LA MICHOACANA, INC. *et al.*, | : | | |
| | : | | |
| Plaintiffs & Counter-Defendants, | : | Civil Action No.: | 11-1623 (RC) |
| | : | | |
| v. | : | Re Document No.: | 144 |
| | : | | |
| PRODUCTOS LACTEOS TOCUMBO S.A. | : | | |
| DE C.V., | : | | |
| | : | | |
| Defendant & Counter-Claimant. | : | | |

## MEMORANDUM OPINION

### DENYING DEFENDANT/COUNTER-CLAIMANT'S MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT MEMORANDUM OPINION

## I. INTRODUCTION

Now before the Court is Defendant/Counter-Claimant Productos Lacteos Tocumbo S.A. De C.V.'s ("PROLACTO") motion for reconsideration of this Court's September 25, 2014, Memorandum Opinion that granted in part and denied in part separate motions for summary judgment filed by PROLACTO and Plaintiffs/Counter-Defendants Paleteria La Michoacana, Inc. and Paleteria La Michoacana, LLC (collectively, "PLM"). Through its motion, PROLACTO seeks reversal of two judgments made by the Court: first, that PROLACTO was not entitled to any form of monetary relief for its counterclaims; and second, that PROLACTO failed to demonstrate substantial familiarity with its marks within any relevant American consumer market such that the famous mark doctrine, if adopted as the law by this Court, would not apply to establish priority for those marks. Upon consideration of PROLACTO's motion and the memoranda in support thereof and opposition thereto, the Court will deny the motion for reconsideration as to both issues.

## II.  BACKGROUND

This long-running trademark dispute first arrived before the Court when PLM brought

suit against PROLACTO challenging a decision by the Trademark Trial and Appeal Board

("TTAB") regarding various registered and unregistered trademarks used to sell Mexican-style

ice cream bars, called paletas, and other frozen ice cream treats.[1]  PROLACTO responded to

PLM's lawsuit by filing a counterclaim that asserted several counts against PLM under various

sections of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, as well as District of Columbia common

law.  PLM and PROLACTO then each filed a motion for summary judgment in which they

sought a ruling on nearly all of the counts in the complaint and counterclaim.  *See generally*

PLM's Mot. Part. Summ. J., ECF No. 114; PROLACTO's Mot. Part. Summ. J., ECF No. 116.

This Court, in a lengthy Memorandum Opinion dated September 25, 2014 (the "Memorandum

Opinion"), granted in part and denied in part each party's motion.[2]  *See generally Paleteria La*

*Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.* ("*PLM I*"), No. CV 11-1623

(RC), 2014 WL 4759945 (D.D.C. Sept. 25, 2014) (ECF No. 137).

PROLACTO now has filed a motion for reconsideration pursuant to Federal Rule of Civil

Procedure 54(b) challenging the Memorandum Opinion's conclusions as to two issues.  *See*

*generally* PROLACTO's Mem. Supp. Mot. Reconsid., ECF No. 144-1.  First, PROLACTO

objects to the Court's ruling that PROLACTO "fail[ed] to provide evidence demonstrating

sufficient familiarity with the marks in any relevant United States market, let alone across the

---

[1]        The Court hereby incorporates by reference the facts and conclusions made in the
Court's summary judgment Memorandum Opinion.  *See generally Paleteria La Michoacana,*
*Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, No. CV 11-1623 (RC), 2014 WL 4759945
(D.D.C. Sept. 25, 2014) (ECF No. 137).

[2]        In particular, the Court granted PLM's motion for summary judgment as to six of
PROLACTO's seven counterclaim counts: Counts I, III, IV, V, VI, and VII.  *See PLM I*, 2014
WL 4759945, at *3; Order, ECF No. 136.

entire country," such that the famous mark doctrine, if it were adopted by this Court, would not apply to establish priority of PROLACTO's marks. *See PLM I*, 2014 WL 4759945, at *14. PROLACTO now argues that the Court "misunderstood" its arguments about the famous mark doctrine, "misstated" the appropriate legal standard for the doctrine, and failed to consider evidence that established that PROLACTO had achieved sufficient familiarity with its marks in at least one American consumer market — namely, "Mexican immigrants (and travelers who have visited Mexico) seeking authentic Mexican-style paletas."  PROLACTO's Mem. Supp. Mot. Reconsid., ECF No. 144-1, at 14-16.

Second, PROLACTO challenges the Court's decision to grant summary judgment in favor of PLM on the question of whether the equitable defenses of laches, acquiescence, and estoppel prohibited PROLACTO from recovering any form of monetary relief, including PLM's profits, if PROLACTO were to succeed on any of its counterclaim theories. *See PLM I*, 2014 WL 4759945, at *32-33.  The Court made this determination primarily on the basis that PROLACTO, in its opposition to PLM's motion for summary judgment, ignored the monetary recovery issues, including whether there was sufficient evidence of actual damages and whether equitable principles prohibited the Court from awarding any monetary relief to PROLACTO. *See id*.  PROLACTO now argues, however, that the Court erred in granting summary judgment for PLM because PLM had failed to meet its initial burden of proof as to the acquiescence, equitable estoppel, and laches defenses, and as such, the Court should have denied PLM's motion for summary judgment irrespective of PROLACTO's failure to oppose PLM's motion. *See* PROLACTO's Mem. Supp. Mot. Reconsid., ECF No. 144-1, at 6-12.  The Court addresses these issues and others below.

### III.  LEGAL STANDARD

Because PROLACTO seeks reconsideration of an interlocutory order, Rule 54(b) governs the Court's analysis.  *See Judicial Watch v. U.S. Dep't of Army*, 466 F. Supp. 2d 112, 123 (D.D.C. 2006) (discussing Rule 54(b)'s application to denials of dispositive motions).  Rule 54(b) is silent, however, on the standard of review applicable to motions for reconsideration of such interlocutory decisions and orders.  "To fill this gap, courts in this district have held that 'relief upon reconsideration [of an interlocutory decision] pursuant to Rule 54(b) is available as justice requires.'"  *United States v. Coughlin*, 821 F. Supp. 2d 8, 18 (D.D.C. 2011) (quoting *Hoffman v. District of Columbia*, 681 F. Supp. 2d 86, 90 (D.D.C. 2010)).  Under the "as justice requires" standard, reconsideration may be warranted when a court has "patently misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or where a controlling or significant change in the law has occurred."  *U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 893 F. Supp. 2d 258, 268 (D.D.C. 2012) (internal citation, quotation, and alteration omitted); *see also Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004).

"These considerations leave a great deal of room for the court's discretion and, accordingly, the 'as justice requires' standard amounts to determining 'whether [relief upon] reconsideration is necessary under the relevant circumstances.'"  *Lewis v. District of Columbia*, 736 F. Supp. 2d 98, 102 (D.D.C. 2010) (quoting *Cobell*, 224 F.R.D. at 272).  But at the same time, a court's discretion under Rule 54(b) is "limited by the law of the case doctrine and subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."  *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (citations omitted).  A court therefore

may deny a motion for reconsideration when it merely asserts "'arguments for reconsideration [that] the court ha[s] … already rejected on the merits.'"  *McLaughlin v. Holder*, 864 F. Supp. 2d 134, 141 (D.D.C. 2012) (quoting *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011)).  Finally, "[t]he burden is on the moving party to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." *Second Chance Body Armor*, 893 F. Supp. 2d at 268 (citing *Husayn v. Gates*, 588 F. Supp. 2d 7, 10 (D.D.C. 2008)).

## IV.  ANALYSIS

### A.  Reconsideration Of The Court's Judgment As To The Famous Mark Doctrine

As the Court explained in the Memorandum Opinion, the controversial and rarely-adopted famous mark doctrine allows a trademark to be deemed so well-known in a particular American market — despite no actual commercial use in the market — that the historic territoriality principle is disregarded and priority is established instead through reputation in the United States rather than actual use, as the territoriality principle otherwise requires.  *See PLM I*, 2014 WL 4759945, at *12 (citing *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1094 (9th Cir. 2004)).  Thus, the gist of the famous mark doctrine is that "even those who use marks in other countries can sometimes — when their marks are famous enough — gain exclusive rights to the marks in this country."  *Id.* (citing *Grupo Gigante*, 391 F.3d at 1095).  To date, the Court remains aware of this narrow exception to the territoriality principle having been adopted only within the Ninth Circuit and in a handful of TTAB opinions, *see id.* (citing cases), and the doctrine without question has never been accepted as the law by any court in this Circuit. *See, e.g.*, *id.* at *15 (discussing the famous mark doctrine but ultimately concluding that the Court "need not determine whether the doctrine should be recognized because the facts of this

case are insufficient to warrant further judicial inquiry"); *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans, Inc.*, 511 F. Supp. 2d 1, 11-12 (D.D.C. 2007), *aff'd in part, rev'd in part*, 525 F.3d 8 (D.C. Cir. 2008) ("No court in the District of Columbia Circuit has yet considered whether the famous marks doctrine operates to secure priority of use in the United States to a foreign user, and this Court need not do so here.").

In Counterclaim Count II, PROLACTO asserts that PLM violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), through its use of certain marks that allegedly infringed on PROLACTO's use of the LA MICHOACANA marks and the Indian Girl design. *See PLM I*, 2014 WL 4759945, at *11. PROLACTO, a Mexico-based company, moved for summary judgment on this count by relying almost exclusively on the famous mark doctrine to establish priority of the relevant marks within the United States. *See* PROLACTO's Mem. Supp. Mot. Summ. J., ECF No. 116-1, at 33-34. In the Memorandum Opinion, the Court analyzed the law surrounding the famous mark doctrine, with heavy reliance on the Ninth Circuit's leading decision in *Grupo Gigante*, to determine how the doctrine ought to be applied if it were adopted by this Court as the appropriate legal standard. *See PLM I*, 2014 WL 4759945, at *14. Ultimately, after completing its legal analysis and considering the evidence presented at summary judgment by PROLACTO, the Court concluded that PROLACTO had failed to establish substantial familiarity, as defined in *Grupo Gigante*, for its marks on both a nationwide scale and within any individual geographic market.[3] *See id*. at *14-15. PROLACTO now asks

---

[3]     After reaching this conclusion, the Court proceeded to analyze the trademark validity issues under the longstanding territoriality principle, which requires actual use of a mark within the United States to establish priority. *See PLM I*, 2014 WL 4759945, at *15-17. Through that analysis, the Court determined that a dispute regarding priority use of the relevant marks by PLM and PROLACTO existed only in the Houston, Texas, market. *See id*. at *16-17.

the Court to reconsider and reverse this conclusion.  For the reasons explained below, the Court

finds no grounds for doing so.

    1.  The Court Did Not Misstate Or Misapply The Famous Mark Doctrine Standard

    PROLACTO asserts in its motion for reconsideration that the Court "misstated" the

appropriate legal standard for the famous mark doctrine.  *See* PROLACTO's Mem. Supp. Mot.

Reconsid., ECF No. 144-1, at 14.  In support, PROLACTO cites the following quotation from

the Memorandum Opinion: "[T]he Court concludes that no reasonable jury could find that any of

PROLACTO's marks have achieved the level of nationwide consumer awareness among the

general public required to be considered 'famous.'"  *PLM I*, 2014 WL 4759945, at *28 (quoted

at PROLACTO's Mem. Supp. Mot. Reconsid., ECF No. 144-1, at 14).  This quotation, however,

has no bearing on the Court's famous mark doctrine analysis because the language on which

PROLACTO relies unquestionably comes from within the Memorandum Opinion's discussion of

*federal trademark dilution*, which establishes an entirely different and independent standard for

determining familiarity.  *See id.* at *26-28 (discussing, in Part IV.G., federal trademark dilution

under the Lanham Act).  Indeed, the very next sentence after the sentence quoted by

PROLACTO provides: "Accordingly, the Court grants summary judgment to PLM *on the*

*counterclaim for federal trademark dilution* and need not consider the remaining elements of the

count."  *Id.* at *28 (emphasis added).  This quotation, then, does nothing to support

PROLACTO's claim that the Court "misstated" the famous mark doctrine standard.

    Nonetheless, PROLACTO still maintains that the Court incorrectly applied the famous

mark doctrine by allegedly requiring PROLACTO to demonstrate that its marks were "'widely

recognized by the general consuming public of the United States' or [to] otherwise establish the

level of recognition necessary to receive nation[]wide protection against trademark dilution."

*See* PROLACTO's Mem. Supp. Mot. Reconsid., ECF No. 144-1, at 15 (quoting *PLM I*, 2014 WL 4759945, at *27).  But the Court did no such thing.  In fact, PROLACTO once again mistakenly quotes in part language from the Memorandum Opinion's discussion of federal trademark dilution, not the part of the Memorandum Opinion actually dealing with the famous mark doctrine.  *See PLM I*, 2014 WL 4759945, at *26-28 (discussing, in Part IV.G., federal trademark dilution under the Lanham Act).

Even on closer inspection, however, it is clear from the Memorandum Opinion that the Court in no way confused the famous mark doctrine standard with the nationwide fame standard required for federal trademark dilution.  Specifically, the Court plainly acknowledged that the famous mark doctrine, under the parameters set forth in *Grupo Gigante*, permits a finding of substantial familiarity in a relevant market that is narrower than the nationwide consumer market.  *See, e.g.*, *id.* at *14 (finding a lack of substantial familiarity for PROLACTO's marks in "*individual markets* within the United States, as *Grupo Gigante* permits" (emphasis added)); *id.* (finding that "PROLACTO has not provided satisfactory *market-by-market evidence* from which the Court might conclude if, where, or when its marks achieved 'substantial' familiarity such that the famous mark doctrine should apply" (emphasis added)); *id.* at *15 (concluding that "PROLACTO does not come close to meeting [the famous mark doctrine's] burden *in any market*" (emphasis added)).  Thus, the Court's analysis did not hold PROLACTO to trademark dilution's nationwide fame requirement.[4]  *Cf. id.* at *26-27 (explaining, in Part IV.G.1., that federal trademark dilution requires nationwide fame, not niche fame).

---

[4]     PROLACTO does not challenge the Court's legal conclusion as to the level of fame required for federal trademark dilution or, for that matter, any aspect of the Court's trademark dilution analysis.

The Court also rejects PROLACTO's assertion that the Court applied the wrong standard by requiring the "level of recognition necessary to receive nation[]wide protection against trademark dilution." *See* PROLACTO's Mem. Supp. Mot. Reconsid., ECF No. 144-1, at 15. Rather, the Court, again relying on *Grupo Gigante* as the leading case on this issue, carefully analyzed what level of familiarity should be required under the famous mark doctrine if it were adopted and ultimately concluded that "the appropriate threshold percentage should be somewhere below, but still very close to, 50% of consumers in the relevant market[.]" *See PLM I*, 2014 WL 4759945, at *14. PROLACTO does not explain how the Court's conclusion on this issue was wrong as a matter of law, nor does PROLACTO cite any part of the Memorandum Opinion in which the Court stated (or even suggested) that the famous mark doctrine requires the same, heightened threshold level of fame that federal trademark dilution demands. *Compare id.* (percentage of familiarity for the famous mark doctrine "should be somewhere below, but still very close to, 50% of consumers in the relevant market"), *with id.* at *27 (citing *7-Eleven Inc. v. Lawrence I. Wechsler*, 83 U.S.P.Q.2d 1715, 2007 WL 1431084, at *14 (TTAB May 17, 2007) (finding that 7-Eleven's BIG GULP mark was famous for dilution purposes based in part on survey evidence of unaided awareness by 73% of consumers); *Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. 11-CV-01846, 2012 WL 2571719, at *8 (N.D. Cal. June 30, 2012) (denying Samsung's motion for summary judgment on dilution despite Apple's survey showing that less than 60% of respondents were aware of the trade dress in the iPhone and iPad product designs)). The Court therefore rejects PROLACTO's argument because it is unsupported by the plain record established in the Memorandum Opinion and because PROLACTO fails to cite any persuasive (let alone binding) case law to the contrary.

2.  The Court Did Not Misunderstand Or Misapply The Relevant Market Analysis

PROLACTO argues that the Court erred when analyzing whether PROLACTO's marks had achieved the necessary level of familiarity in any specific relevant market.  *See* PROLACTO's Mem. Supp. Mot. Reconsid., ECF No. 144-1, at 15.  Not so.  As was noted above, the Court did look to individual American consumer markets, not just the nationwide consumer market, to determine whether PROLACTO's marks had achieved substantial familiarity anywhere.  In doing so, the Court again relied on *Grupo Gigane* — the same case on which PROLACTO relied in its summary judgment briefing — to conclude that the appropriate standard for "'[t]he relevant American market is the *geographic area* where the defendant uses the alleged infringing mark.'"  *PLM I*, 2014 WL 4759945, at *13 (emphasis added; quoting *Grupo Gigante*, 391 F.3d at 1098).  Thus, looking to PROLACTO's evidence of consumer awareness in various geographic markets, the Court found a lack of substantial familiarity in any individual area.[5]  *See id.* at *13-14.

PROLACTO, however, now suggests that the "relevant American consumer market for these goods are Mexican immigrants (and travelers who have visited Mexico) seeking authentic Mexican-style paletas," not the individual geographic markets that the Court considered in reliance on *Grupo Gigante*.  *See* PROLACTO's Mem. Supp. Mot. Reconsid., ECF No. 144-1, at 15.  But PROLACTO fails to demonstrate where in the summary judgment briefing it specifically argued that this should be the relevant market under the famous mark doctrine.  Instead, the Court finds that PROLACTO is attempting to take a second bite at the apple by proposing, for the first time, a new test for determining the relevant consumer market under the

---

[5]       PROLACTO does not seek reconsideration of the Court's finding that PROLACTO failed to demonstrate substantial familiarity in any *geographic* market within the United States.  This important conclusion therefore stands.

famous mark doctrine.[6]  *See Judicial Watch*, 466 F. Supp. 2d at 123 (discouraging

reconsideration when a party merely seeks a second bite at the apple); *see also Estate of Gaither*

*ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 n.4 (D.D.C. 2011) (motion for

reconsideration is not "a vehicle for presenting theories or arguments that could have been

advanced earlier").  And even more importantly, PROLACTO has not demonstrated how the

Court's famous mark doctrine analysis was inconsistent with *Grupo Gigante* — which clearly

defined the relevant market as the *geographic area* in which the marks are used, *see Grupo*

*Gigante*, 391 F.3d at 1098 (emphasis added; cited at *PLM I*, 2014 WL 4759945, at *13)[7] — nor

has PROLACTO cited any law (binding or otherwise) providing a different market definition

than that adopted in *Grupo Gigante*.

In fact, it appears to the Court that PROLACTO now is the one confusing federal

trademark dilution with the famous mark doctrine.  As evidence, in its reply in support of the

---

[6]       PROLACTO's motion for reconsideration cites to various facts from its summary judgment evidence in an attempt to show that PROLACTO did argue that the relevant market should have been Mexican immigrants.  *See* PROLACTO's Mem. Supp. Mot. Reconsid., ECF No. 144-1, at 16-17.  Though there is no doubt that PROLACTO spent considerable time at summary judgment discussing the alleged popularity of its products among this population, that is not the same as arguing that the famous mark doctrine permits a party to establish priority within such a niche demographic market as a matter of law.  *Cf. Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir.1995) ("[J]ust as a district court is not required to scour the record looking for factual disputes, it is not required to scour the party's various submissions to piece together appropriate arguments.").  In addition, PROLACTO's approach, if adopted, begs the question of what would happen if priority could be established through familiarity in such a narrow and amorphous subpopulation.  Given the likelihood that Mexican immigrants now live throughout the United States, PROLACTO's method appears to be a surefire way to establish nationwide priority through very limited niche fame and no actual use, which seems counter to trademark law in general.  (And the alternative possibility, permitting priority among one demographic but not another in the same geographic region, would make no sense.)

[7]       *See also* Andrew Terry & Heather Forrest, *Where's the Beef? Why Burger King Is Hungry Jack's in Australia and Other Complications in Building A Global Franchise Brand*, 28 Nw. J. Int'l L. & Bus. 171, 203-04 (2008) ("In the United States, at least in the Ninth Circuit's view, 'the relevant American market is the geographic area where the defendant uses alleged infringing mark.'  For Mexican trademark owner Grupo Gigante, that meant the San Diego metropolitan area — just across the Mexican border." (footnotes omitted)).

motion for reconsideration, PROLACTO argues that the Court should have looked to "niche" fame, which at one time was the standard sometimes accepted for a federal trademark dilution claim, to determine the relevant market under the famous mark doctrine.  *See, e.g.*, PROLACTO's Reply Supp. Mot. Reconsid., ECF No. 151, at 23 ("Rather than seeking 'nationwide priority' of its marks, PROLACTO seeks priority of its marks in the niche market of American consumers who purchase the relevant products, namely paletas.").  But, again, PROLACTO has not cited a single case borrowing niche fame as the correct test for the famous mark doctrine, and PROLACTO provides no basis for why the Court should have used niche fame rather than the standard set out in *Grupo Gigante*.

All this leads to a larger frailty in PROLACTO's motion for reconsideration: *Grupo Gigante*, on which PROLACTO's famous mark doctrine argument at summary judgment almost exclusively relied, is not binding law on this Court, nor is it even close to being the majority approach among the federal circuits.  Instead, *Grupo Gigante*'s adoption of the famous mark doctrine remains, at best, an outlier.  Thus, although the Court has acknowledged the sound policy rationales underlying the Ninth Circuit's decision, *see PLM I*, 2014 WL 4759945, at *13, the Court was under no obligation to follow any aspect of *Grupo Gigante*'s analysis or holding in the first place.  It seems impossible to say, then, that this Court erred as a matter of law in applying the famous mark doctrine when it was under no obligation to do so anyways.

In sum, PROLACTO's motion for reconsideration misunderstands the analysis in the Memorandum Opinion and does not provide any change in the law, clear error, or other grounds that might merit reconsideration of the Court's decision.  *Cf. Second Chance Body Armor*, 893 F. Supp. 2d at 268.  The Court therefore denies PROLACTO's motion for reconsideration as to the famous mark doctrine.

**B. Reconsideration Of The Court's Judgment As To The Availability Of Monetary Relief For PROLACTO's Counterclaims**

In the Memorandum Opinion, the Court granted summary judgment for PLM on the issue that PROLACTO is not entitled to any form of monetary relief on its remaining counterclaim causes of action.[8]  *See PLM I*, 2014 WL 4759945, at *33.  The Court reached this conclusion after PROLACTO failed to oppose PLM's arguments for summary judgment regarding the availability of certain monetary relief and the applicability of certain equitable defenses that might otherwise prevent such relief under the Lanham Act.  *See id.* at *33-34.  PROLACTO now seeks reconsideration of the Court's conclusions on the basis that PLM never met its initial burden at summary judgment on the equitable defenses and the Court therefore erred by granting summary judgment in PLM's favor regardless of the fact that PROLACTO failed to respond to most of PLM's arguments.  *See* PROLACTO's Mem. Supp. Mot. Reconsid., ECF No. 144-1, at 6.

The Court begins by noting the history of PROLACTO's litigation posture regarding its potential entitlement to monetary relief.  Specifically, PLM dedicated roughly one-third of its motion for summary judgment to arguing why PROLACTO could not recover money in any form for its counterclaims, *see* PLM's Mem. Supp. Mot. Summ. J., ECF No. 114, at 29-39, but PROLACTO's opposition memorandum ignored PLM's arguments almost in their entirety.

---

[8]     By separate motion, PLM argues that the Court's summary judgment Order should be altered to clarify that PROLACTO is not entitled to recover monetary damages on any of its counterclaims, not just on PROLACTO's "trademark counterclaims" as the Order originally stated. *See* Order, ECF No. 136; PLM's Mot. Revise Mem. Op. & Order, ECF No. 154, at 12.  As the Court explains through a separate decision to be issued contemporaneously, the Court agrees with PLM that, as phrased, the Order was inconsistent with the Memorandum Opinion, which clearly stated that summary judgment was granted on PLM's motion "to enter summary judgment that PROLACTO is not entitled to any type of monetary relief *for its counterclaims*."  *PLM I*, 2014 WL 4759945, at *32 (emphasis added).  The Court therefore will issue a revised Order correcting the original Order as so.

Instead, PROLACTO now attempts to assert certain merits arguments for the first time at the motion for reconsideration stage, and PROLACTO offers no explanation for why it previously did not raise many of these arguments in opposition to PLM's motion for summary judgment.

That being said, the Court nonetheless appreciates that the monetary recovery section of the Memorandum Opinion was somewhat unclear as to both the Court's factual analysis and legal conclusions.  At the same time, however, the Court remains mindful that a motion for reconsideration generally is not an opportunity for a party to relitigate an issue that was or should have been raised at an earlier stage in the litigation.  *See Singh*, 383 F. Supp. 2d at 101 (Rule 54(b) is "subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again").  That is never truer than when a party fails to meet its procedural obligation to oppose an argument at summary judgment and then that party seeks to correct its error through a motion for reconsideration.  *Cf. Rodriguez v. Doe*, No. 09C19134F1983, 2010 WL 2837169, at *2 (N.D. Ill. July 19, 2010) ("[M]otions for reconsideration enable courts to correct their own errors, not the litigants' errors.").  Nonetheless, given the confusion surrounding these issues and the current posture of this litigation hurriedly moving towards trial, the Court finds that the interests of justice warrant a closer look at some of the questions posed by PROLACTO's motion for reconsideration.

### 1.  Monetary Recovery, Affirmative Defenses, Burdens, And Caveats

Two separate but related categories of issues arise from the Memorandum Opinion and PROLACTO's motion for reconsideration: first, PROLACTO's entitlement to the various forms of monetary relief permitted under the Lanham Act; and second, PLM's affirmative defenses to PROLACTO's recovery of such monetary relief.  The notable difference between these two is

that each places the ultimate burden of proof differently.  Thus, as PLM's motion for summary

judgment explained, PROLACTO, as the counter-claimant, bore the burden of proving that it

would be entitled to any form of monetary relief under the Lanham Act — namely actual

damages, PLM's profits, attorneys' fees, treble damages, or punitive damages — if it were to

prevail on its counterclaims.  *See, e.g.*, *Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 192

(1st Cir. 2012) (plaintiff has burden of proving willfulness requirement for recovering the alleged

infringer's profits); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993) ("A

plaintiff must prove both the fact and the amount of damage." (citing 2 J. Thomas McCarthy,

Trademarks and Unfair Competition § 30:27 (2d ed. 1984)).  On the other hand, the parties also

agree that PLM, as the counter-defendant, bore the ultimate burden of proving its affirmative

defenses of acquiescence, laches, and equitable estoppel.  *See Tech 7 Sys. v. Vacation*

*Acquisition, LLC*, 594 F. Supp. 2d 76, 80 (D.D.C. 2009) ("Where summary judgment is sought

based on an affirmative defense … the defendant bears the burden of proof of establishing facts

supporting the affirmative defense."); *see also Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696

F. Supp. 2d 368, 379 (S.D.N.Y. 2010) ("A defendant has the burden of proof on his affirmative

defense of acquiescence."); *Randall v. Mayor & City Council of Baltimore*, 512 F. Supp. 150,

151 (D. Md. 1981) ("Since laches is an affirmative defense, the burden of proving laches is on

the defendant.").

Which party bears the ultimate burden of proof on an issue is important because that

factor also determines what is required for the movant to succeed at summary judgment under

Rule 56.  In particular, when the nonmoving party (here, PROLACTO) bears the ultimate burden

of proof, the moving party (here, PLM) may carry its initial procedural burden at summary

judgment by doing no more than "pointing out to the district court … that there is an absence of

evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

(1986); *see also Moncada v. Peters*, 579 F. Supp. 2d 46, 50-51 (D.D.C. 2008).  In such

situations, the movant's motion for summary judgment is "properly made and supported," Fed.

R. Civ.P. 56(e)(2), when the movant

> inform[s] the district court of the basis for its motion, and identif[ies] those
> portions of "the pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes demonstrate the
> absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

By contrast, when the party moving for summary judgment bears the ultimate burden of

proof, such as when the movant (here, PLM) is asserting an affirmative defense, the movant

bears the initial burden at summary judgment of providing competent evidence that demonstrates

the absence of a genuine dispute of material fact with respect to the elements of the claims.  *See*

*Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (citation omitted); *see also Chaplin v.*

*NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) ("To obtain summary judgment, if the

movant bears the burden of proof on an issue because as a defendant he is asserting an

affirmative defense, he must establish beyond peradventure all of the essential elements of the

defense to warrant judgment in his favor." (internal citation, quotation, and alternation omitted));

*Calderone v. United States*, 799 F.2d 254, 258 (6th Cir. 1986) (explaining that if a summary

judgment movant has the ultimate burden of proof, "his showing must be sufficient for the court

to hold that no reasonable trier of fact could find other than for the moving party" (citation and

emphasis omitted)).  Thus, the general procedure at summary judgment may be summarized as

follows:

> The standard for a motion for summary judgment differs depending on whether
> the party moving for summary judgment also bears the burden of proof on the
> relevant issue…. When the moving party does not have the burden of proof on
> the issue, he need show only that the opponent cannot sustain his burden at trial.

16

But where the moving party has the burden — the plaintiff on a claim for relief or the defendant on an affirmative defense — his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.

*Wise v. Bandy*, No. 12-cv-291, 2013 U.S. Dist. LEXIS 185296, *8-9 (N.D. Ga. Dec. 31, 2013).

The distinction between which party bears the ultimate burden of proof on an issue, and thus what procedural burden the movant faces at summary judgment, still comes into play even when the nonmovant fails to oppose an argument made by the movant in its summary judgment motion, as occurred here when PROLACTO failed to respond to PLM's arguments regarding many of the monetary recovery and affirmative defenses issues. Specifically, the failure to oppose such arguments is not, by itself, sufficient for a court to grant summary judgment because "even where a summary judgment motion is unopposed, it is only properly granted when the movant has met its burden" under Rule 56. *Alexander v. FBI*, 691 F. Supp. 2d 182, 193 (D.D.C. 2010) (citations omitted); *see also Whitaker v. CIA*, No. CV 12-316, 2014 WL 3973865, at *4 (D.D.C. Aug. 15, 2014) (failure to oppose summary judgment motion is not sufficient basis, by itself, to grant motion). Accordingly, a court must independently evaluate the motion for summary judgment, remaining cognizant of the fact that "the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment … is satisfied." *Celotex*, 477 U.S. at 323. In sum, then, the movant always must satisfy its procedural burden under the summary judgment rules, regardless of whether the argument is unopposed, but at the same time, that procedural burden depends on which party bears the ultimate burden of proof at trial on the issue.

The Court's explanation thus far is not disputed by the parties, as both agree who bears what burden and when. Instead, the question raised by PROLACTO's motion for reconsideration concerns whether PLM, as the movant, met its procedural burden in regard to its

claims, or whether the Court erred by granting summary judgment to PLM when PLM had not

first discharged its initial burden under Rule 56. *See* PROLACTO's Reply Supp. Mot.

Reconsid., ECF No. 151, at 5 ("[T]he controlling question here is, whether or not, PLM met its

initial burden by establishing facts to support *each element* of each of its affirmative defenses.  If

PLM fails to establish facts supporting any element of its affirmative defense, PLM simply failed

to meet its initial burden and the burden never shifted to PROLACTO." (emphasis in original)).

Yet PROLACTO's query does not come before this Court on a clean slate, but rather

only on reconsideration after PROLACTO failed to respond to many of PLM's arguments at

summary judgment.  Thus, although the Court finds that reconsideration of certain issues will

serve the interests of justice, that reconsideration still must occur within the narrow structures of

Rule 54(b) and the procedural rules of this Court.  In particular, it is well established in this

Circuit that "motions for reconsideration," whatever their procedural underpinnings, cannot be

used as "a vehicle for presenting theories or arguments that could have been advanced earlier."

*Estate of Gaither*, 771 F. Supp. 2d at 10 n.4.  In addition, pursuant to this Court's local rules and

the ample case law on this subject, those opposition arguments that were not made at summary

judgment are deemed conceded.  *See* LCvR 7.1(b) (memorandum of opposing points and

authorities "shall" be filed in opposition to a motion, and if such a memorandum is not filed, "the

court may treat the motion as conceded"); *Burke v. Inter-Con Sec. Sys., Inc.*, 926 F. Supp. 2d

352, 356 (D.D.C. 2013) (plaintiff conceded arguments raised in defendant's motion for summary

judgment by failing to oppose those arguments in plaintiff's opposition memorandum and sur-

reply); *Hopkins v. Women's Div., General Bd. of Global Ministries*, 238 F. Supp. 174, 178

(D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a

motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded[.]").

Taken together, the Court finds no basis — nor does PROLACTO offer any compelling basis — on which PROLACTO should be permitted to make arguments on the merits in opposition to PLM's summary judgment motion for the first time through the motion for reconsideration; to permit otherwise would be inconsistent with the rules of this Court and counter to the "interests of justice." In short, then, the Court finds that the proper approach for reconsideration at this time is as follows: the Court will reevaluate whether the decision to grant summary judgment for PLM on the monetary recovery and equitable defenses issues was correct, but in doing so, the Court will consider only those arguments, if any, raised by PROLACTO in its summary judgment briefing, not PROLACTO's new arguments raised for the first time through the motion for reconsideration because those arguments were waived.

## 2.  Forms Of Monetary Recovery

Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), provides for the recovery of the trademark infringer's profits, any actual damages sustained by the plaintiff/counter-claimant, and the costs of the action.  Attorneys' fees also may be awarded to the prevailing party in "exceptional situations."  *See id.*  PLM moved for summary judgment in its favor on the question of whether PROLACTO may recover any form of money relief on its counterclaims.  *See* PLM's Mem. Supp. Mot. Summ. J., ECF No. 114, at 38.  Though not specifically raised in PROLACTO's motion for reconsideration, the Court addresses this issue below in the interests of justice and for the sake of clarity moving forward in this litigation.

*a. Actual Damages*

In its motion for summary judgment, PLM argued that summary judgment should be awarded in its favor on the issue that PROLACTO may not recover actual damages because PROLACTO failed to present evidence of any monetary harm — that is, actual loss — it allegedly suffered from PLM's conduct.  *See* PLM's Mem. Supp. Mot. Summ. J., ECF No. 114, at 40.  As noted above, PROLACTO bears the burden of proof on this issue.  *See, e.g.*, *Foxtrap*, 671 F.2d at 641-42.  PROLACTO did not oppose this argument at summary judgment, and the Court granted summary judgment for PLM because PROLACTO provided no evidence of actual damages.  *See PLM I*, 2014 WL 4759945, at *32 & n.20.  PROLACTO does not seek reconsideration of this aspect of the Memorandum Opinion, *see* PROLACTO's Mem. Supp. Mot. Reconsid., ECF No. 144, at 5 n.1, and the Court finds no independent basis for doing so. As such, the Court's judgment that PROLACTO is not entitled to recover actual damages stands irrespective of the Court's conclusions as to PLM's affirmative defenses.

*b. PLM's Profits*

PLM also moved for summary judgment in its favor on the issue of whether PROLACTO might recover PLM's profits.  *See* PLM's Mem. Supp. Mot. Summ. J., ECF No. 114, at 42-50. An award of profits requires proof that the defendant acted willfully or in bad faith.  *See, e.g.*, *ALPO Petfoods*, 913 F.2d at 968; *Foxtrap*, 671 F.2d at 641-42; *Breaking the Chain Found., Inc. v. Capitol Educ. Support, Inc.*, 589 F. Supp. 2d 25, 31 (D.D.C. 2008).  The burden of proof to show willfulness or bad faith fell on PROLACTO as the counter-claimant.  *See Fishman Transducers*, 684 F.3d at 192-93; *George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532, 1540 (2d Cir. 1992).  Thus, under *Celotex*, PLM could meet its initial burden at summary

judgment by doing no more than "pointing out to the district court … that there is an absence of evidence to support the nonmoving party's case."  477 U.S. at 325.

In opposition to PROLACTO's motion for reconsideration, PLM asserts that the Court granted summary judgment in its favor on this question after PROLACTO failed to respond to PLM's argument that PLM did not act willfully or in bad faith.  *See* PLM's Mem. Opp'n Mot. Reconsid., ECF No. 147, at 19.  The Court, however, disagrees with PLM's assertion that the Court fully resolved this question and, in turn, that the Court granted summary judgment for PLM on this issue.  The Court also disagrees with PLM's suggestion that PROLACTO conceded this issue at the summary judgment stage by failing to address PLM's willfulness and bad faith arguments in the opposition memorandum.

Starting with the latter point, although perhaps not discussed clearly within the parameters of a profit recovery inquiry, PROLACTO did devote a meaningful portion of its summary judgment opposition to arguing why PLM acted willfully and in bad faith when it adopted many, if not all, of the relevant marks.[9]  PROLACTO therefore did not concede this issue, nor would summary judgment have been appropriate on that basis alone under *Celotex*.

---

[9]    *See, e.g.*, PROLACTO's Mem. Opp'n Mot. Summ. J., ECF No. 121, at 13 ("PLM's willfulness is a key matter in all aspects of this lawsuit.  Once this Court finds that PLM's actions were willful and were made in bad faith many of PLM's claims for summary judgment evaporate.");  *id*. ("The undisputed facts herein show that: (1) PLM knew about the widespread fame of each of PROLACTO's LA MICHOACANA and Indian girl trademarks before it adopted each of its increasingly similar marks until they have become virtually indistinguishable …; (2) PLM was clearly aware of the history of the mark LA MICHOACANA and heritage of PROLACTO and its founders, as well as the actual advertising copy used by PROLACTO prior to ever adopting or (albeit falsely, deceptively and misleadingly) using such marks or advertising copy …; (3) despite this knowledge, PLM adopted trademarks and advertisements that were similar to (or identical to) PROLACTO's trademarks and advertisements[; and] (4) PLM adopted these similar trademarks and advertisements to trade on the goodwill established by PROLACTO and its predecessors[.]");  *id*. at 22 ("As a Matter of Law PLM's Actions Were Willful, a Deliberate Intent to Cause Confusion, and With Callous Disregard to PROLACTO's Rights");  *id*. at 33 ("[W]ithin its Statement of Undisputed Facts,

As to the former point, the Memorandum Opinion made clear that the broader question of PLM's potential willfulness and bad faith remained an open issue in this litigation, and that conclusion precluded the Court from granting summary judgment on the profits issue. *See, e.g.*, *PLM I*, 2014 WL 4759945, at *17 n.10 ("[I]t remains an open question, which the Court cannot decide today on the available evidence, whether PLM's adoption of the marks in a particular market was based on PROLACTO's prior use elsewhere in the United States such that PLM cannot be said to have acted in 'good faith,' as the *Tea Rose-Rectanus* doctrine requires."); *id.* ("[I]t remains an unresolved factual issue whether PLM actually intended to copy PROLACTO's marks, or whether PLM merely sought to associate its products with marks that it believed — rightly or wrongly — were used indiscriminately by a variety of companies without any one, recognized source.").

Instead, the Memorandum Opinion pointed out that "[t]he case law … does not support PROLACTO's argument that *awareness of foreign use* [*i.e.*, awareness of PROLACTO's use of the marks in Mexico] creates bad faith adoption within the United States as a matter of law." *Id.* (emphasis added).  The Court's holding therefore was narrower than what PLM makes it out to be, and it remained an open factual question whether PLM acted willfully or in bad faith in using the marks in the Houston, Texas, market based on PROLACTO's use of the marks within the United States — though, the Court points out, there was little, if any, evidence at summary judgment of PLM acting in bad faith on this basis given the timing of when PLM first used its marks, the limited nature of PROLACTO's use of the marks in the United States, and the strong suggestion that numerous other companies have used similar marks and branding in both the

PROLACTO has well-established substantial and probative evidence of PLM's knowing, willful and bad faith appropriation of PROLACTO's Marks, its advertising copy and its trade dress in an attempt to 'pass off' PLM's goods as those sponsored[] by[,] affiliated with or deriving from PROLACTO and from its home town of Tocumbo, Michoacán.").

United States and Mexico.  Nonetheless, based on the evidence presented by each party at summary judgment, whether PROLACTO might recover PLM's profits remained unresolved (though still subject to PLM's affirmative defenses), as a genuine dispute of fact existed on this issue.

*c.  Attorneys' Fees*

The Lanham Act provides for the award of reasonable attorneys' fees to the prevailing party only "in exceptional cases."  15 U.S.C. § 1117(a).  "Although the Act itself does not define the term 'exceptional,' courts have generally held that willful infringement by the defendant constitutes an 'exceptional case[]' under the Act for which attorneys' fees may be awarded." *AARP v. Sycle*, 991 F. Supp. 2d 224, 234 (D.D.C. 2013) (citing *ALPO Petfoods*, 913 F.2d at 961); *see also Lindy Pen.*, 982 F.2d at 1409 ("[G]enerally a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful."); *Agri-Supply Co., Inc. v. Agrisupply.Com*, 457 F. Supp. 2d 660, 666 (E.D. Va. 2006) (prevailing party's burden of "showing defendant's malicious, fraudulent, willful or deliberate conduct" is "clear and convincing evidence").

PLM moved for summary judgment in its favor on the basis that PROLACTO could not establish that it was entitled to attorneys' fees.  *See* PLM's Mem. Supp. Mot. Summ. J., ECF No. 114, at 50-51.  But because the willfulness issue remained unresolved, summary judgment was not, and should not have been, granted for PLM on the question of whether PROLACTO may recover attorneys' fees, despite PLM's suggestion to the contrary.  *Cf.* PLM's Mem. Opp'n Mot. Reconsid., ECF No. 147, at 20.  Of course, the recovery of attorneys' fees remained subject to PLM's equitable defenses.

### d. Treble Damages And Punitive Damages

PLM argued in its motion for summary judgment that punitive damages are not available under the Lanham Act, even for willful infringement. *See* PLM's Mem. Supp. Mot. Summ. J., ECF No. 114, at 53 (citing cases). PLM also argued that under District of Columbia common law, punitive damages are disallowed when the plaintiff (or counter-claimant) did not suffer actual damages. *See id.* (citing cases). In addition, PLM explained that, logically, treble damages could not be awarded when the plaintiff (or counter-claimant) did not suffer actual damages. *See id.* at 51. PROLACTO did not respond to any of these arguments in its summary judgment briefing, thereby conceding the argument that these damages are unavailable as a matter of law.[10] Accordingly, though not addressed clearly in the Memorandum Opinion, the Court finds that such forms of damages are unavailable moving forward for reasons independent of PLM's asserted affirmative defenses.

### 3. PLM's Affirmative Defenses

Monetary relief under the Lanham Act is awarded only "subject to the principles of equity." 15 U.S.C. § 1117(a). Thus, in addition to seeking summary judgment that PROLACTO was not entitled to any form of monetary relief on its counterclaims, PLM also invoked the equitable defenses of laches, acquiescence, and estoppel to establish that even if PROLACTO could satisfy its burden of showing that it was entitled to certain monetary relief, any such recovery, including PLM's profits and attorneys' fees, still was barred. *See* PLM's Mem. Supp. Mot. Summ. J., ECF No. 114, at 51. As the counter-defendant asserting these affirmative defenses, PLM bore the ultimate burden of proof. *See, e.g.*, *Tech 7 Sys.*, 594 F. Supp. 2d at 80; *Fendi Adele S.R.L.*, 696 F. Supp. 2d at 379; *Randall*, 512 F. Supp. at 151. Thus, under the

---

[10]     PROLACTO does not contest these issues in its motion for reconsideration.

relevant summary judgment procedures, PLM, as the movant, also bore the initial burden of providing suitable evidence demonstrating the absence of a dispute of material fact with respect to those claims; otherwise the burden would not shift to PROLACTO and summary judgment could not be granted for PLM, even when PROLACTO failed to respond.  *See Greene*, 164 F.3d at 675; *Chaplin*, 307 F.3d at 372; *Calderone*, 799 F.2d at 258; *see also Byrne v. CSX Transp., Inc.*, 541 F. App'x 672, 675 (6th Cir. 2013) ("Only after, and not before, the initial burden of proof is discharged does the burden shift to the plaintiff to show that summary judgment on an affirmative defense should be denied.  The burden of proof will not shift to the plaintiff on an affirmative defense absent the defendant first discharging the initial burden." (citations omitted)).

In the Memorandum Opinion, the Court granted summary judgment in favor of PLM as to the laches, acquiescence, and estoppel defenses.  *See PLM I*, 2014 WL 4759945, at *33.  In doing so, the Court explained that this conclusion was based on PROLACTO's failure to address these issues in opposition to PLM's motion for summary judgment.  *See id*.  PROLACTO now argues that regardless of PROLACTO's failure to oppose PLM's motion, the Court erred by not considering whether PLM had met its initial procedural burden at summary judgment before entering judgment in PLM's favor.  The Court recognizes that the Memorandum Opinion did not explicitly undertake such analysis, and the Court therefore will do so now — with the caveat, discussed above, that the Court cannot consider the substantive arguments asserted by PROLACTO for the first time in its motion for reconsideration.  Ultimately, the outcome remains the same: summary judgment was properly granted in favor of PLM.

### a. Acquiescence

"In the trademark sense, acquiescence means there is some sort of implied consent to a certain action."  *Mariangeli v. Lehman*, 32 F. Supp. 2d. 1, 10 (D.D.C. 1998).  The acquiescence

defense has three elements: (1) the alleged senior user actively represented that it would not assert a right or claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice. *See Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 294 F.3d 383, 395 (2d Cir. 2002); *Bd. of Regents of the Univ. Sys. Of Ga. v. Buzas Baseball*, 176 F. Supp. 2d 1338, 1348 (N.D. Ga. 2001). PLM therefore was required to produce evidence supporting each of these elements in order to satisfy its procedural burden at summary judgment. *See Chaplin*, 307 F.3d at 372.

In support of its motion for summary judgment, PLM argued that the following facts — each of which was supported by citations to PLM's competent summary judgment evidence — were sufficient to establish the elements of acquiescence:

- PROLACTO did not file an infringement claim until January 9, 2012, more than twenty years after PLM first used LA MICHOACANA and more than eight years after PLM applied to register its Indian Girl designs. *See generally* PROLACTO's Answer & Countercl., ECF No. 13.

- PROLACTO had knowledge of PLM's use of LA INDITA MICHOACANA in 2006, but waited six years (until January 2012) to assert a claim for money damages. *See* PLM's Stmt. Facts, ECF No. 114, Nos. 30, 31.

- On December 13, 2006, PROLACTO acquiesced to PLM's use of its Indian Girl marks, informing the U.S. Patent and Trademark Office ("USPTO") that its Indian Girl design could coexist with PLM's LA INDITA MICHOACANA and PLM's other Indian Girl designs. *See id*. No. 25.

- It was not until January 2012, more than eight years later, that PROLACTO filed a claim alleging infringement and seeking monetary recovery. *See id*. No. 31.

- Between 2006, when PROLACTO allegedly obtained actual notice of PLM's trademarks and told the USPTO that its trademarks could coexist with PLM's, and January 9, 2012, PLM had expanded the sale of its products into a number of states, including Indiana, Hawaii, Louisiana, New Mexico, New Jersey, Arizona, Arkansas, Washington, Idaho, and Oklahoma. *See id*. Nos. 2, 30.

*See* PLM's Mem. Supp. Mot. Summ. J., ECF No. 114, at 52-53.

The Court finds that based on this evidence, PLM met its minimal initial summary judgment burden of providing evidence to establish each element of the acquiescence defense. The first element was met when PROLACTO apparently represented to the USPTO in December 2006 that it would not assert a right or a claim for PLM's use of the marks by informing the USPTO that that there was no likelihood of confusion between its Indian Girl design and PLM's Indian Girl design — that is, that the two marks could coexist.  The second element was met because PROLACTO then delayed for approximately six years before filing its infringement claim with this Court on January 9, 2012.   Lastly, the third element, undue prejudice, was met because during this delay, PLM expanded its business into numerous other geographic markets, which cost PLM money, improved PLM's reputation, and expanded PLM's goodwill.  *See Bridgestone/Firestone Research, Inc. v. Auto. Club De L'Quest De La France*, 245 F.3d 1359, 1363 (Fed. Cir. 2001) ("Economic prejudice arises from investment in and development of the trademark, and the continued commercial use and economic promotion of a mark over a prolonged period adds weight to the evidence of prejudice."); *see also Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 999 (9th Cir. 2006) ("A defendant may establish prejudice by showing that during the delay, it invested money to expand its business or entered into business transactions based on his presumed rights." (citations omitted)); *Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096, 1117 (N.D. Cal. 2008) ("[A] defendant suffers prejudice if, in reliance on plaintiff's delay, she invests labor and capital to build a trademark's goodwill and future value.").  With PLM having met its burden, the burden then shifted to PROLACTO. Because PROLACTO presented no arguments in response, it failed to meet its burden, and summary judgment in PLM's favor was proper.[11]

---

[11]     PROLACTO now argues that PLM's acquiescence defense is barred "as a matter

### b. Laches

As an equitable doctrine, "[l]aches is founded on the notion that equity aids the vigilant and not those who slumber on their rights." *NAACP v. NAACP Legal Def. & Educ. Fund, Inc.*, 753 F.2d 131, 137 (D.C. Cir. 1985). This affirmative defense, which PLM has the ultimate burden of proving as the counter-defendant, "'requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *Pro-Football, Inc. v. Harjo*, 415 F.3d 44, 47 (D.C. Cir. 2005) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121-22 (2002)). The Court finds that PLM provided such proof at summary judgment, thereby satisfying its initial procedural burden.

First, PLM showed that "PROLACTO did not file an infringement claim until January 9, 2012, more than twenty years after PLM first used LA MICHOACANA and more than eight years after PLM applied to register its Indian Girl designs." PLM's Mem. Supp. Mot. Summ. J., ECF No. 114, at 52. Similarly, PLM demonstrated that "PROLACTO had actual knowledge of PLM's use of LA INDITA MICHOACANA in 2006, but waited six years to assert a claim for money damages."[12] *Id.* (citing PLM's Stmt. Facts, ECF No. 114, Nos. 30, 31). Second, PLM demonstrated prejudice by showing that during this period of delay, PLM expanded into a number of new states. *See* PLM's Stmt. Facts, ECF No. 114, Nos. 2, 30; *see Miller*, 454 F.3d at 999; *Bridgestone/Firestone Research*, 245 F.3d at 1363; *Saul Zaentz*, 627 F. Supp. 2d at 1117.

---

of law" based on the cancellation proceeding PROLACTO filed with the TTAB in April 2007. *See* PROLACTO's Mem. Supp. Mot. Reconsid., ECF No. 144, at 7. PROLACTO, however, waived this argument by failing to raise it in opposition to PLM's summary judgment motion. *See Hopkins*, 238 F. Supp. 2d at 178.

[12]     Similar to acquiescence, PROLACTO attempts to argue through its motion for reconsideration that any delay on its part was excusable due to the 2007 TTAB cancellation proceedings. *See* PROLACTO's Mem. Supp. Mot. Reconsid., ECF No. 144-1, at 10. This argument was waived when PROLACTO failed to assert it at summary judgment. *See Hopkins*, 238 F. Supp. 2d at 178.

Accordingly, with PROLACTO having ignored this issue in its opposition memorandum and therefore not met its burden, the Court finds that summary judgment was properly granted in favor of PLM.

### c. Equitable Estoppel

In its motion for summary judgment, PLM explained that "'[e]quitable estoppel can prevent a party 'from taking advantage of his inconsistent conduct to the detriment of another,' and 'to prevent a party by virtue of his own conduct from claiming a right to the detriment of the other party, who was entitled to rely on such conduct and has acted accordingly.'" PLM's Mem. Supp. Mot. Summ. J., ECF No. 114, at 52 (quoting *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 90 F. Supp. 2d 15, 21-22 (D.D.C. 2000)). Though PLM's analysis on this issue was somewhat sparse, the Court is satisfied that PLM provided the necessary evidence at summary judgment to meet its initial procedural burden on the equitable estoppel defense.[13]

Specifically, estoppel requires the defendant to establish "(1) words, acts, conduct, or acquiescence by the plaintiff causing the defendant to believe in the existence of a certain state of things; (2) wil[l]fulness or negligence with regard to the acts, conduct, or acquiescence; and (3) detrimental reliance by the defendant upon the state of things so indicated." *Buzas Baseball*, 176 F. Supp. 2d at 1347-48. First, PLM provided evidence that PROLACTO acted by informing the

---

[13]    PLM need only succeed on one affirmative defense to bar PROLACTO from recovering monetary damages under the Lanham Act. Accordingly, summary judgment as to each defense — laches, acquiescence, and estoppel, all of which are distinct equitable defenses requiring different factual elements — serves as an alternative and independent bar to PROLACTO's recovery. *See, e.g.*, *What-A-Burger Of Virginia, Inc. v. Whataburger, Inc. Of Corpus Christi, Texas*, 357 F.3d 441, 452 (4th Cir. 2004) (describing acquiescence as an "additional basis" to laches for preventing relief in trademark suit); *Commerce Nat. Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 995 F. Supp. 490, 504 (D.N.J. 1998) ("Acquiescence is distinct from laches in that it applies only where the senior user has given active or affirmative consent to the junior user's use of the mark." (citations omitted)); 6 McCarthy on Trademarks and Unfair Competition § 31:41 (4th ed.) (explaining that laches and acquiescence are "two separate legal categories" that require different factual elements).

USPTO that its Indian Girl design could coexist with PLM's LA INDITA MICHOACANA and

PLM's other Indian Girl designs.  *See* PLM's Stmt. Facts, ECF No. 114, No. 25.  Second, PLM

argued that PROLACTO's action may be deemed to have been at least negligent given that

PROLACTO later did seek monetary damages for infringement of the same marks by filing suit

with this Court.  Lastly, detrimental reliance occurred through PLM's expansion into numerous

other states during this timeframe.  *See id.* Nos. 2, 30.  Once again, this was sufficient to shift the

evidentiary burden to PROLACTO, but PROLACTO did not respond.  Accordingly, the Court

finds that granting summary judgment for PLM on the estoppel defense was proper.

### 4.  Unclean Hands

PROLACTO asserts in its motion for reconsideration that PLM's equitable defenses are

barred as a matter of law because PLM acted with "unclean hands."  *See* PROLACTO's Mem.

Supp. Mot. Reconsid., ECF No. 144-1, at 13 (citing cases).  But PROLACTO did not assert an

unclean hands defense at summary judgment, and as the Court explained above, PROLACTO

cannot assert through a motion for reconsideration those arguments that could have and should

have been raised earlier.  *See Estate of Gaither*, 771 F. Supp. 2d at 10 n.4.  As such, any

consideration of PROLACTO's argument would be procedurally inappropriate and not in the

interests of justice.

In sum, reconsideration of the challenged portions of the Memorandum Opinion confirms

that the Court's initial conclusions were proper, even if the analysis itself was less than clear at

times.  The Court therefore affirms its decision to grant summary judgment in favor of PLM on

the question of whether PROLACTO might recover any form of monetary relief on its

counterclaims.

**V.  CONCLUSION**

For the foregoing reasons, Defendant/Counter-Claimant's motion for reconsideration is

**DENIED**.  An order consistent with this Memorandum Opinion is separately and

contemporaneously issued.

Dated:  February 3, 2015                                    RUDOLPH CONTRERAS
                                                           United States District Judge