# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| PALETERIA LA MICHOACANA, INC. *et al.*, | : | | |
| | : | | |
| Plaintiffs & Counter-Defendants, | : | Civil Action No.: | 11-1623 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 336, 340, 345, |
| | : | | 346, 350, 351, |
| PRODUCTOS LACTEOS TOCUMBO S.A. | : | | 358 |
| DE C.V., | : | | |
| | : | | |
| Defendant & Counter-Claimant. | : | | |

## MEMORANDUM OPINION

**GRANTING PLAINTIFFS' MOTION TO SUBSTITUTE AND JOIN SUCCESSOR IN INTEREST; DENYING PLAINTIFFS' MOTION TO AMEND THE JUDGMENT; DENYING DEFENDANT'S MOTION FOR NEW TRIAL; DENYING DEFENDANT'S MOTION TO AMEND FINDINGS AND TO AMEND THE JUDGMENT; GRANTING PLAINTIFFS' OPPOSITION AND OBJECTIONS TO DEFENDANT'S BILL OF COSTS, CONSTRUED AS A MOTION; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR LEAVE TO FILE SURREPLY; DENYING DEFENDANT'S REQUEST FOR HEARING**

## I.  INTRODUCTION

This case arises from the long-running dispute between Plaintiffs/Counter-Defendants

Paleteria La Michoacana, Inc. and Paleteria La Michoacana (Sub), Inc. (collectively, "PLM")[1]

and Defendant/Counter-Claimant Productos Lacteos Tocumbo S.A. De C.V. ("PROLACTO").

Specifically, this litigation concerns the parties' rights to use various registered and unregistered

trademarks when selling frozen confections in the United States.

---

[1] For the reasons explained below, the Court will grant PLM's motion to substitute an additional PLM-related entity as the sole Plaintiff in this action and join that same entity as an additional Counter-Defendant. *See infra* Part III.  The Court's references to "PLM" refer to all PLM entities, collectively.  The Court will refer to specific PLM entities where the distinction is relevant.

After resolving a number of preliminary issues, the Court conducted a bench trial over the course of thirteen days beginning on September 14, 2015 and ending on October 1, 2015. On May 27, 2016, the Court issued extensive Findings of Facts and Conclusions of Law resolving the remaining issues in the case.  After trial, the parties filed a number of post-trial motions.

For the reasons explained more fully below, the Court will grant PLM's motion to substitute another PLM-related entity as the sole Plaintiff in this action and join that same entity as an additional Counter-Defendant.  The Court will also deny each parties' request to amend the findings and judgment and deny PROLACTO's motion for a new trial.  Finally, upon consideration of PROLACTO's bill of costs and PLM's opposition, the Court will order both parties to bear their own costs.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The Court's previous Findings of Fact and Conclusions of Law set for the factual and procedural history of this case in detail.  *See generally Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.* (*PLM VI*), 188 F. Supp. 3d 22 (D.D.C. 2016).[2] The Court assumes the parties' familiarity with the background set forth in its earlier opinion. Nevertheless, the Court will briefly summarize the facts and procedural posture of this case, as described in the Court's previous opinion.  *See id.*  For clarity, the Court will address the facts relevant to the pending post-trial motions in the context of each of the specific motions.

---

[2] Where the Court cites prior reported dispositions in this matter, those citations use chronological numbering for ease of reference.  These numbers do not correspond to the similar references found in the Court's Findings of Fact and Conclusions of Law, which included citations to a different set of prior dispositions.  *See PLM VI*, 188 F. Supp. 3d at 30 (referring to prior dispositions in this case as *PLM I*, *PLM II*, and *PLM III*).

## A. Brief Factual Overview

PLM and PROLACTO are in the business of manufacturing and selling "paletas" and other frozen treats.  Paletas are a style of ice cream bars and popsicles originating in Mexico that are traditionally made from fruit, spices, and nuts.

PROLACTO is a Mexican company that the Andrade Malfavon family founded in 1992.  The Andrade Malfavon family continues to own PROLACTO.  The company traces its history to Tocumbo, a city in the Mexican state of Michoacán, in the 1940s, which is the purported origin of the paleta and the shops, known as "paleterias," that make and sell them.[3]  PROLACTO primarily does business in the United States through licensing agreements with various members of the Andrade Malfavon family who own and operate individual paleterias in certain markets, namely, Florida, Texas, Northern California, and North Carolina.  Until relatively recently, PROLACTO did not directly own any paleterias in the United States or otherwise directly sell its products to any consumers in the United States.

PLM traces its history to at least as early as 1991, when two brothers, Mexican immigrants Ignacio Gutierrez and Ruben Gutierrez, began selling paletas out of pushcarts in Northern California using the name "La Michoacana."  That name literally means "the woman from the state of Michoacán" in Spanish.  The partnership dissolved in 1999, and Ignacio Gutierrez operated the business as a sole proprietorship for several years before incorporating in California. PLM's business has grown significantly since its beginnings as a pushcart operation in Northern California.  PLM currently manufactures its products in a factory in Modesto,

---

[3] Michoacán one of the thirty-one states that, along with the Federal District, comprise the thirty-two Federal Entities of Mexico.  It is located along the coast in western Mexico.  Michoacán is home to a sizeable population of Purépecha people, whose women's traditional folkloric dress commonly consists of hair braids on each side, a white blouse, a pink skirt, and sandals.  The "Indian Girl" designs at issue in this matter reflect that traditional dress.

California and distributes its products throughout various parts of the United States.  PLM

distributes its products to large-scale retailers such as Costco, Wal-Mart, and Walgreens, as well

as Hispanic grocery stores such as El Super and Vallarta and a variety of other retail outlets.

Both PLM and PROLACTO use a variety of trademarks when selling their products in

the United States.  This litigation concerns the dispute between PLM and PROLACTO over the

right to use those marks.  The parties sharply dispute, among many other things, which of them

first used those marks in the United States, and each party accuses the other of engaging in bad

faith in a variety of different ways.

### B.  Brief Procedural History

The procedural history of this matter spans roughly a decade.  The Court briefly restates

that history here.  *See also PLM VI*, 188 F. Supp. 3d at 28 (setting forth procedural history).

### 1.  TTAB Proceedings

This dispute began in earnest in 2007 when PROLACTO filed a petition with the

Trademark Trial and Appeal Board ("TTAB"), a body of the United States Patent and Trademark

Office ("USPTO"), to cancel PLM's U.S. Registration No. 3,210,304 for the mark titled "LA

INDITA MICHOACANA."  *See* Pet. Cancellation, TTAB Dkt. 1.[4]  On May 20, 2011, the TTAB

granted PROLACTO's petition for cancellation of PLM's LA INDITA MICHOACANA mark,

concluding that PROLACTO had established priority of use and likelihood of confusion with

respect to several of its asserted, unregistered marks.  *See generally Productos Lacteos Tocumbo*

*S.A. De C.V. v. Paleteria La Michoacana, Inc.*, 98 U.S.P.Q.2d 1921 (T.T.A.B. 2011).  The

TTAB denied PLM's motion for reconsideration on July 13, 2011.  *See* TTAB Dkt. 115.

---

[4] Pursuant to 15 U.S.C. § 1071(b)(3), the Court admitted the record of the underlying
proceeding before the TTAB in this case at the joint request of the parties.  *See* Min. Order (Nov.
18, 2013); Joint Status Report at 3–5, ECF No. 98.

### 2.   The Present Action

PLM brought this action pursuant to the Lanham Act, 15 U.S.C. § 1071(b), on September 8, 2011.  *See* Compl., ECF No. 1.  The operative Complaint is now the Second Amended Complaint, which was filed on June 11, 2012.[5]  *See* 2d Am. Compl., ECF No. 40. PLM's Second Amended Complaint alleges four causes of action: Count I seeks reversal of the TTAB's decision to cancel the registration of PLM's LA INDITA MICHOACANA mark and denial of PROLACTO's cancellation petition; Count II seeks a declaration that there is no likelihood of confusion between PLM's LA INDITA MICHOACANA mark and various marks asserted by PROLACTO on the basis of their common usage of the word "MICHOACANA"; Count III alleges that PROLACTO's use of its Indian Girl mark infringes three of PLM's registered marks under 15 U.S.C. § 1114, including its LA INDITA MICHOACANA mark; and Count IV seeks to cancel PROLACTO's registration of certain marks containing the name "LA FLOR DE MICHOACAN" if a likelihood of confusion is found between those marks and PLM's marks.  *See* 2d Am. Compl. ¶¶ 42–61.

PROLACTO, in turn, filed seven counterclaims.  Specifically, Counterclaim Count I alleges that PLM infringed PROLACTO's registered LA FLOR DE MICHOACAN and design

---

[5] Earlier in the litigation, the Court denied PROLACTO's motion for a temporary restraining order to prevent PLM from infringing on PROLACTO's trademarks during a convention for ice cream distributors and vendors.  *See Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.* (*PLM I*), 901 F. Supp. 2d 54 (D.D.C. 2012).  The Court also denied PROLACTO's motion to strike PLM's defenses to PROLACTO's counterclaims. *See Paleteria La Michoacana v. Productos Lacteos* (*PLM II*), 905 F. Supp. 2d 189 (D.D.C. 2012).  In a later opinion, the Court denied PROLACTO's motion seeking a protective order requiring that the deposition of its corporate designees take place in or near Mexico City.  *See Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.* (*PLM III*), 292 F.R.D. 19, 21 (D.D.C. 2013).

mark under 15 U.S.C. § 1114(1);[6] Counterclaim Count II alleges trademark infringement, unfair competition, passing off, false advertising, false association, and false designation in violation of 15 U.S.C. § 1125(a); Counterclaim Count III alleges trademark infringement of the District of Columbia's common law; Counterclaim Count IV alleges trademark dilution under 15 U.S.C. § 1125(c); and Counterclaim Counts V, VI, and VII seek cancellation of two of PLM's registered marks due to fraud and abandonment. *See* Ans. 2d Am. Compl. & Countercls. ¶¶ 39–87, ECF No. 41.

The parties filed cross-motions for summary judgment after the close of discovery and the Court granted in part and denied in part both motions. *See generally Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.* (*PLM IV*), 69 F. Supp. 3d 175 (D.D.C. 2014). The Court then granted in part and denied in part PLM's motion to revise that Memorandum Opinion and Order, *see* Mem. & Order, ECF No. 174, and denied PROLACTO's motion for reconsideration, *see Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.* (*PLM V*), 79 F. Supp. 3d 60 (D.D.C. 2015). The Court issued a First Revised Order on February 3, 2015. *See* First Revised Order, ECF No. 175.

The Court's Findings of Fact and Conclusions of law set forth in detail which claims and counterclaims survived summary judgment. *See PLM VI*, 188 F. Supp. 3d at 30. In brief, the Court denied summary judgment to both parties on Count I of PLM's Second Amended Complaint and neither party sought summary judgment on Counts II, III, and IV. *Id.* Turning to PROLACTO's counterclaims, the Court granted summary judgment in favor of PLM on Counterclaim Counts I, III, IV, V, VI, and VII. *Id.* at 30–31. With regard to the claims under

---

[6] The relevant mark is PROLACTO's U.S. Registration No. 3,249,113. *See PLM IV*, 69 F. Supp. 3d at 196–97 (discussing Counterclaim I and the including an image of the relevant marks).

trademark infringement, false designation of origin, passing off, and unfair competition in Counterclaim Count II, the Court entered partial judgment in favor of PLM limiting this claim to the Houston, Texas market and denied summary judgment to both parties as to whether PROLACTO has established secondary meaning for its marks. *Id.* at 30. The Court also resolved a number of issues related to the false advertising claims found in Counterclaim Count II, but left others to be resolved at trial. *Id.* at 30–31.

After the Court narrowed the issues through summary judgment, the case proceeded to trial. The bench trial took place over thirteen days between September 14, 2015 and October 1, 2015. After considering the parties proposed findings of fact and conclusions of law, as well as other motions filed during or after the trial, the Court issued its extensive Findings of Fact and Conclusions of Law. *See generally PLM VI*, 188 F. Supp. 3d 22. In brief, the Court entered judgment in favor of PROLACTO as to Count I of PLM's Second Amended Complaint and entered judgment in favor of PLM as to Counts II and III. The Court dismissed Count VI as moot. Finally, the Court entered judgment in favor of PLM as to PROLACTO's Counterclaim Count II.

### 3. Motions Pending Before the Court

After the trial, but shortly before the Court issued its Findings of Fact and Conclusions of Law, PLM filed a motion to substitute a PLM-related entity as the sole Plaintiff and to add that entity as an additional Counter-Defendant because of the transfer of the marks at issue in this case. *See generally* Pls.' Mot. Sub. & Join Successor in Interest ("PLM Mot. Sub."), ECF No. 336. After the Court issued its Findings of Fact and Conclusions of Law, PLM filed a motion to alter or amend the Court's judgment on Complaint Count I that affirmed the cancellation of PLM's U.S. Registration No. 3,210,304. *See generally* Pls.' Mot. Amend J. ("PLM's Mot.

Amend"), ECF No. 340.  After briefing on that motion, PROLACTO filed a motion seeking

leave to file a surreply to address issues raised in PLM's reply brief.  *See* Def.'s Mot. Leave File

Surreply or, in the Alternative, Mot. Strike ("PROLACTO's Mot. Surreply"), ECF No. 351.

PROLACTO filed a motion for a new trial based on the discovery of PLM's registration and

ownership of the domain name "laflordemichoacan.com," *see generally* Def.'s Mot. New Trial

("PROLACTO's Mot. New Trial"), ECF No. 345, and a motion to amend the Court's findings

and legal conclusions with regard to the incontestability of PLM's Indian Girl Design marks, *see*

*generally* Def.'s Mot. Amend Findings & Amend J. ("PROLACTO's Mot. Amend"), ECF No.

346.  PROLACTO also filed a bill of costs, *see generally* PROLACTO's Bill of Costs, ECF No.

343, which PLM objected to, *see generally* Pls.' Opp'n & Objs. Def.'s Bill of Costs ("PLM's

Opp'n Bill of Costs"), ECF No. 350.

 After the close of briefing on its motion for a new trial and its motion to amend,

PROLACTO requested a hearing to address the pending motions.  *See* Def.'s Req. Hr'g, ECF

No. 358.  PROLACTO argues that "oral argument may assist the Court in evaluating

PROLACTO's" motions.  Def.'s Req. Hr'g ¶ 9.  PLM responds that it "do[es] not believe that a

hearing is necessary."  *See* Pls.' Resp. Def.'s Req. Hr'g at 1–2, ECF No. 359.  Nevertheless,

PLM requests that the Court also hear oral argument on PLM's motion to amend if it decides to

grant a hearing.  *See* Pls.' Resp. Def.'s Req. Hr'g at 1–2.  The allowance of oral argument is

"within the discretion of the Court."  *See* LCvR 7(f).  The Court finds that there is no need for

oral argument on the motions.  The parties have briefed the pending motions extensively and the

written arguments provide a sufficient basis for the Court to rule.  The Court therefore denies

PROLACTO's request for a hearing.

### III.  PLM'S MOTION TO SUBSTITUTE PARTIES

The Court first turns to PLM's motion pursuant to Federal Rule of Civil Procedure 25(c) to substitute PLM Operations, LLC ("PLM Operations") as the sole Plaintiff and to join that entity as an additional Counter-Defendant.  *See generally* PLM Mot. Sub.  PROLACTO opposes the motion to substitute and join PLM Operations.  *See generally* Def.'s Opp'n Pls.' Mot. Sub. & Join Successor in Interest ("PROLACTO's Opp'n Mot. Sub."), ECF No. 341.  For the reasons set forth below, the Court will grant PLM's motion, substitute PLM Operations as the sole Plaintiff, and join the same entity as an additional Counter-Defendant.

### A.  Legal Standard

Federal Rule of Civil Procedure 25(c) provides that, "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."  Fed. R. Civ. P. 25(c). The decision to grant or deny a Rule 25(c) motion is a matter within the district court's discretion.  *See Burka v. Aetna Life Ins. Co.*, 87 F.3d 478, 482 (D.C. Cir. 1996); *see also Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1988) ("[O]rders [granting Rule 25(c) substitution] are reviewed only for abuse of discretion."), *cert. denied*, 489 U.S. 1079 (1989); *Prop-Jets, Inc. v. Chandler*, 575 F.2d 1322, 1324 (10th Cir. 1978) ("Substitution of a successor in interest or its joinder as an additional party under Rule 25(c) is generally within the sound discretion of the trial court.").

The primary basis for deciding the motion is whether substitution would "facilitate the conduct of the litigation."  *Comm'ns Imp. Exp., S.A. v. Republic of Congo*, 118 F. Supp. 3d 220, 231 (D.D.C. 2015) (quoting *Citibank v. Grupo Cupey, Inc.,* 382 F.3d 29, 32 (1st Cir. 2004)); *see also* 7C Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 1958 (3d ed. 2016)

(noting the trial court's discretion).  This focus on "considerations of convenience and economy . . . prevails because Rule 25(c) has no bearing on the substantive relationship between the parties." *Comm'ns Imp. Exp.*, 118 F. Supp. 3d at 231.  Regardless of the transfer in interest and subsequent substitution, "[t]he merits of the case . . . are still determined vis-à-vis the originally named parties." *Minn. Mining & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1263 (Fed. Cir. 1985); *see also In re Covington Grain Co., Inc.*, 638 F.2d 1362, 1364 (5th Cir. 1981) ("Rule 25(c) is not designed to create new relationships among parties to a suit but is designed to allow the action to continue unabated when an interest in the lawsuit changes hands.").

Rule 25(c) places no time limit on a party seeking substitution or joinder.  *See* Fed. R. Civ. P. 25(c); *see also Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71 (3d Cir. 1993); 7C Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 1958 (3d ed. 2016) ("Since Rule 25(c) is wholly permissive there is no time limit on moving to substitute under its provisions.").

## B.  Analysis

Pursuant to Federal Rule of Civil Procedure 25(c), PLM has moved to substitute PLM Operations as the sole Plaintiff and to join that entity as an additional Counter-Defendant.  *See generally* PLM Mot. Sub.  PLM argues that PLM (Sub) transferred the marks at issue in this case to PLM Operations on April 1, 2016.  PLM Mot. Sub at 2.  Thus, PLM argues, PLM Operations became the real party in interest and the Court should substitute PLM Operations as the sole Plaintiff.  PLM Mot. Sub at 2.  To avoid any prejudice to PROLACTO, PLM states that PLM Operations volunteers to join the case as an additional Counter-Defendant.  PLM Mot. Sub at 2.

PROLACTO opposes the motion to substitute and join PLM Operations.  *See generally* PROLACTO's Opp'n Mot. Sub.  PROLACTO argues that a purported successor in interest must

show, not only a valid transfer of interest, but also "that the successor will be liable for any wrongs of its predecessor."  PROLACTO's Opp'n Mot. Sub at 1.  PROLACTO argues that PLM has not shown that "PLM Operations has acquired the liabilities of PLM (Sub)."  PROLACTO's Opp'n Mot. Sub at 2.  PROLACTO states that the Court should permit limited discovery on the purported transfer of the relevant marks and hold an evidentiary hearing.  PROLACTO's Opp'n Mot. Sub at 2.  In the alternative, PROLACTO argues that the Court should deny the motion. PROLACTO's Opp'n Mot. Sub at 2.

### 1.  The Transfer of the Relevant Marks

Before trial, PLM filed a motion pursuant to Rule 15 of the Federal Rules of Civil Procedure seeking leave to correct the caption in this case.  Specifically, PLM requested leave to correct the case caption to replace "Paleteria La Michoacana, LLC" as a Plaintiff and Counter-Defendant with "Paleteria La Michoacana (Sub), Inc." in order to reflect a change in its corporate form.  *See* Pls.' Mot. Leave Correct Case Caption, ECF No. 210.  The Court granted that motion on March 31, 2016.  *See* Mem. & Order, ECF No. 333.

The following day, PLM (Sub) sold "substantially all of its assets" to PLM Operations, which is a limited liability company organized under the laws of the state of Delaware.  *See* PLM Mot. Sub. at 3; *see also* PLM Mot. Sub., Decl. of Robert J. Spigner ("Spigner Decl.") ¶¶ 2–3, ECF No. 336-1; Spigner Decl., Ex. A (providing the State of Delaware Certificate of Formation and a copy of the Delaware Secretary of State's website listing relevant details of PLM Operations).  PLM has provided the Bill of Sale, General Assignment and Conveyance, which sets forth the details of the transaction.  *See* Spigner Decl., Ex. B.  The transferred assets included the marks at issue in this case, including U.S. Registration Numbers 2,905,172, 2,968,652, and 3,210,304.  *See* Spigner Decl. ¶ 3; *see also* Spigner Decl., Ex. B, schd. 1, annex D.

Also on April 1, 2016, PLM (Sub) and PLM Operations executed a Trademark Assignment Agreement memorializing the transfer of the marks.  *See* Spigner Decl. ¶ 4; *see also* Spigner Decl., Ex. C (Trademark Assignment Agreement).  PLM has recorded that agreement with the USPTO.  *See* Spigner Decl. ¶ 4.  According to the terms of the agreement, PLM (Sub) assigned and transferred to PLM Operations "all of Assignor's right, title and interest in and to the Trademarks, together with all goodwill associated with said Trademarks, and the right to sue and recover for, and the right to profits or damages due or accrued, arising out of or in connection with any and all past, present or future infringements or dilution of or damage to the Trademarks or the associated goodwill."  Spigner Ex. C at 20.[7]  PLM has also provided copies of entries on the USPTO's website that reflect PLM Operations as the listed owner of the relevant marks.  *See* Spigner Decl. ¶ 5; *see also* Spigner Decl., Ex. D.

As PLM correctly states, federal registration of a trademark is prima facie evidence that the registrant is the proper owner of that trademark.  *See* 15 U.S.C. § 1057(b) ("A certificate of registration of a mark . . . shall be prima facie evidence . . . of the owner's ownership of the mark."); *see also id.* § 1057(d) (noting that a certificate of registration may be issued to the assignee of the application, "but the assignment must first be recorded in the [USPTO]").

PROLACTO has not presented any evidence undermining the Spigner affidavit or the documentary evidence put forth by PLM.  In fact, PROLACTO appears to acknowledge that PLM "may have shown that certain of the relevant interests have been transferred." PROLACTO's Opp'n Mot. Sub. at 10.  In light of the extensive documentary evidence of a

---

[7] Because Exhibit C does not include separate pagination, the Court will refer to the page numbers created by the Court's Electronic Case Filing system.

transfer and the prima facie validity of the registration in the name of PLM Operations, the Court

finds that PLM (Sub) transferred the marks at issue in this case to PLM Operations.

### 2.  PROLACTO's Reliance on the Doctrine of Successor Liability

Instead of focusing on the transfer of *assets*, including the relevant marks, PROLACTO

argues that PLM has "not provided any, much less sufficient, evidence that PLM Operations has

acquired the *liabilities* of PLM (Sub)."  PROLACTO's Opp'n Mot. Sub. at 2 (emphasis added);

*see also* PROLACTO's Opp'n Mot. Sub. at 1 ("[T]he Court must determine that the successor

will be liable for any wrongs of its predecessor.").  PROLACTO urges the Court to rely on the

doctrine of successor liability to determine whether PLM (Sub) has transferred a valid interest to

PLM Operations for the purposes of Rule 25.  PROLACTO's Opp'n Mot. Sub. at 7.  Successor

liability is an exception to the general rule that "a successor corporation is not liable for the

wrongs of its predecessor."  *Material Supply Int'l, Inc. v. Sunmatch Indus. Co., Ltd.*, 62 F. Supp.

2d 13, 23 (D.D.C. 1999).[8]  Under the four traditional exceptions, a successor corporation will be

liable where: "(1) there is an express or implied agreement to assume the liabilities; (2) the

transaction amounts to a consolidation or merger; (3) the successor entity is a mere continuation

or reincarnation of the predecessor entity; or (4) the transaction was fraudulent, not made in good

faith, or made without sufficient consideration."  *Id.* (quoting *Bingham v. Goldberg, Marchesano*,

637 A.2d 81, 89–90 (D.C. 1994)).

PROLACTO's reliance on successor liability is misplaced.  Rule 25(c) asks simply

whether an "interest is transferred."  Fed. R. Civ. P. 25(c).  PROLACTO's confusion appears to

---

[8] PROLACTO argues that Delaware law should govern the analysis of successor liability, but states that "the substantive law is essentially the same in the District of Columbia and Delaware."  PROLACTO's Opp'n Mot. Sub. at 8 n.5.  Because the Court finds that the doctrine of successor liability is not relevant to this case, there is no need to decide with state law applies.

arise from cases where a party seeks to use Rule 25(c) to *force* an unwilling entity into the litigation.  For instance, PROLACTO cites *Select Creations, Inc. v. Paliafito America, Inc.*, 852 F. Supp. 740 (E.D. Wis. 1994) and *Panther Pumps & Equipment Co. v. Hydrocraft, Inc.*, 566 F.2d 8 (7th Cir. 1977) for the principle that the court must consider the substantive law of successor liability before approving a substitution.  *See* PROLACTO's Opp'n Mot. Sub. at 7. In both cases, however, the court considered successor liability only because a party was attempting to bring an unwilling successor before the court.  *See Select Creations*, 852 F. Supp. at 766 (granting a motion to substitute unwilling non-parties); *Panther Pumps*, 566 F.2d at 28 (approving substitution of unwilling party).

This case does not fit that pattern.  Instead, PLM Operations is volunteering to join the case, both as the sole Plaintiff and as an additional Counter-Defendant.  *See* PLM Mot. Sub. at 6. This distinction is longstanding.  For instance, in *McComb v. Row River Lumber Co.*, which PROLACTO cites in its brief, the Ninth Circuit refused to bring an unwilling defendant into the case.  177 F.2d 129, 130 (9th Cir. 1949).  The court explained that it had allowed substitutions "in cases where the plaintiff below has transferred his interest in the subject matter of the action," but that, "where substitution is sought in this court for a defendant below . . . we have declined to allow a substitution."  *Id.*

This distinction, found in other cases, reflects the due process concerns raised by forcing a party to step into the shoes of another against their will, perhaps even after a court has entered a judgment.  *See, e.g.*, *Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 72 (3d Cir. 1993) (considering third party's due process interests); *Panther Pumps*, 566 F.2d at 24 (same).  Those fairness concerns are not at issue in a case like this, where a plaintiff has transferred an interest in the case and voluntarily seeks substitution.  *See, e.g.*, *Burka v. Aetna Life Ins. Co.*, 87 F.3d 478,

480 (D.C. Cir. 1996) (making no mention of successor liability or due process where all parties agreed that a third party should be a party to the suit).  Because PLM Operations seeks to join this action voluntarily, the Court's analysis must focus on whether "an interest is transferred," Fed. R. Civ. P. 25(c), not whether that interest comes with liabilities attached.

### 3.  Substitution and Joinder Will Facilitate Litigation

The proper criteria for deciding a motion under Rule 25(c) is whether substitution would "facilitate the conduct of the litigation."[9]  *Comm'ns Imp. Exp., S.A. v. Republic of Congo*, 118 F. Supp. 3d 220, 231 (D.D.C. 2015) (quoting *Citibank v. Grupo Cupey, Inc.,* 382 F.3d 29, 32 (1st Cir. 2004)); *see also* 7C Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 1958 (3d ed. 2016) ("An order of joinder is merely a discretionary determination by the trial court that the transferee's presence would facilitate the conduct of the litigation.").  Any substitution or joinder under Rule 25(c) does not change the substance of the litigation, but simply allows the case to go forward when an interest changes hands.[10]  *See In re Covington Grain Co., Inc.*, 638 F.2d 1362, 1364 (5th Cir. 1981).  The Court finds that substitution is appropriate here.

---

[9] Substitution is not mandatory under Rule 25(c).  PLM argues that refusing to substitute PLM Operations would be an abuse of discretion.  *See* Pl.'s Reply Supp. Mot. Sub. ("PLM's Reply Mot. Sub.") at 13, ECF No. 342.  PLM's interpretations of the cases it cites are overbroad.  For instance, in *ELCA Enterprises, Inc. v. Sisco Equipment Rental & Sales, Inc.*, the Eighth Circuit found an abuse of discretion where "the district court both refused substitution for the new party, *and* refused to let the old party continue."  53 F.3d 186, 191 (8th Cir. 1995) (emphasis added).  Another case cited by PLM states that substitution should "be freely granted," but the case is discussing Rule 25(a)(1), which governs substitution following the death of a party.  *See Natale v. Country Ford Ltd.*, 287 F.R.D. 135, 137 (E.D.N.Y. 2012).  Courts in this circuit consistently hold that the district court has broad discretion when considering a motion under Rule 25(c).  *See, e.g.*, *Burka v. Aetna Life Ins. Co.*, 87 F.3d 478, 482 (D.C. Cir. 1996) (reviewing substitution under Rule 25(c) for abuse of discretion after citing cases from other circuits); *Comm'ns Imp. Exp., S.A. v. Republic of Congo*, 118 F. Supp. 3d 220, 231 (D.D.C. 2015) ("Rule 25(c) is wholly permissive . . . ."); *see also* 7C Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 1958 (3d ed. 2016) ("Rule 25(c) is wholly permissive . . . .").

[10] PLM seeks to rely on the "real party in interest" requirement found in Rule 17(a)(1).  That is not the proper test for a motion under Rule 25(c).  In fact, Rule 25(c) "expressly permits

The relevant marks are undoubtedly at the core of this long-running litigation.  For example, Count I of PLM's Second Amended Complaint seeks reversal of the TTAB decision cancelling one of the transferred marks.  *See* 2d Am. Compl. ¶¶ 42–48.  Similarly, Counts II and III seek a declaratory judgment of noninfringement and injunctive relief to stop ongoing infringement, respectively, related to the transferred marks.  *See* 2d Am. Compl. ¶¶ 49–51, 52–56.  The Court has found that uncontested evidence shows that PLM (Sub) transferred the relevant marks to PLM Operations.  *See supra* Part. III.B.1.  Although the rights of PLM Operations, if substituted, are the same as the original Plaintiffs, it now owns the relevant marks and has the sole interest in the outcome of this litigation.  *See Crown Point Partners LLC v. Crown Point Plan Comm'n*, 275 F.R.D. 279, 282 (N.D. Ind. 2011) ("First Financial, as a creditor and transferee in interest to the property, has a protectable interest in the outcome of this litigation and should be substituted, although its rights do not exceed those of Lauth and CPP in this litigation.").  Therefore, the Court finds that substituting the owner of the relevant marks as the sole Plaintiff will best facilitate any ongoing litigation.

PLM also volunteered to join PLM Operations as an additional Counter-Defendant to address any possible prejudice to PROLACTO.  *See* PLM Mot. Sub. at 2.  Following PROLACTO's opposition to PLM's motion for substitution, PLM "withdr[ew] that portion of its Motion seeking to add PLM Operations as an additional counter-defendant," but nevertheless "*does not object* if the Court joins PLM operations as an additional counter-defendant."  Pl.'s Reply Supp. Mot. Sub. ("PLM's Reply Mot. Sub.") at 15–16, ECF No. 342 (emphasis added).  Rule 25(c) permits the Court to substitute *or* join a party.  *See* Fed. R. Civ. P. 25(c).  In order to

---

parties to continue in an action, even if they do not remain the real party in interest, as long as the cause of action *itself* survives the transfer to the new party."  *ELCA Enters.*, 53 F.3d at 191.

avoid any possibility of prejudice, the Court will therefore exercise its discretion to join PLM

Operations as an additional Counter-Defendant, as well as substituting it as the sole Plaintiff.

### 4.  PROLACTO's Request for Discovery and a Hearing

Finally, the Court turns to PROLACTO's request for discovery and a formal hearing on

PLM's motion to substitute PLM Operations.  PROLACTO argues that "[l]imited discovery may

better enable the Court to make an informed determination of whether PLM (Sub) has made a

valid transfer of interest to PLM Operations and to avoid an inequitable outcome to PROLACTO."

PROLACTO's Opp'n Mot. Sub. at 11.  PROLACTO also requests a hearing on this issue.

PROLACTO's Opp'n Mot. Sub. at 11

First, the Court has found that the uncontested evidence is sufficient to show that PLM

(Sub) transferred the relevant trademarks to PLM Operations.  *See supra* Part III.B.1.  Second,

the Court's decision to join PLM Operations as an additional Counter-Defendant ensures that the

substitution will avoid inequitable outcomes for PROLACTO.  *See supra* Part III.B.3.  Finally,

the Court notes that there is no requirement to grant limited discovery or a hearing in this

context.  The Seventh Circuit recently noted that there is no rule "that an evidentiary hearing is

mandatory to resolve every Rule 25(c) substitution."  *Sullivan v. Running Waters Irrigation, Inc.*,

739 F.3d 354, 359 (7th Cir. 2014).  In fact, courts that have required an evidentiary hearing often

point to the due process concerns raised by hailing an unwilling party into the action, particularly

where substitution effectively imposes liability.  *See Luxliner P.L. Exp.*, 13 F.3d at 72.  That is

not the case here, and the Court therefore denies PROLACTO's request for limited discovery

and a hearing.

## IV.  THE PARTIES' MOTIONS TO AMEND THE FINDINGS AND JUDGMENT

Following the bench trial, post-trial briefing, and the Court's release of its Findings of

Fact and Conclusions of Law, both parties have filed motions to amend the Court's judgment.

Each of the motions raises legal arguments for the first time in this litigation.  Therefore, the

Court will deny both motions.

### A.  Legal Standards

#### 1.  Federal Rule of Civil Procedure 52(b)

Pursuant to Federal Rule of Civil Procedure 52(b), a party may file a motion requesting

that the Court "amend its findings—or make additional findings—and . . . amend the judgment

accordingly."  Fed. R. Civ. P 52(b).  This Rule "permits the trial court to correct manifest errors

of law or fact, make additional findings or take other action that is in the interests of justice."

*Ashraf-Hassan v. Embassy of France*, 185 F. Supp. 3d 94, 108 (D.D.C. 2016) (quoting *Bigwood*

*v. Def. Intelligence Agency*, 770 F. Supp. 2d 315, 318 n.2 (D.D.C. 2011)).  The decision to

amend findings or the judgment is committed "to the sound discretion of the trial judge."  *See*

*Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, No. 94-1184, 1997 WL 243223, at *2

(D.D.C. May 7, 1997); *see also Ashraf-Hassan*, 185 F. Supp. 3d at 108.  And a party bringing a

Rule 52(b) motion "bears a heavy burden."  *Ashraf-Hassan*, 185 F. Supp. 3d at 108 (quoting

*Material Supply Int'l*, 1997 WL 243223, at *2).

A motion under Rule 52(b) "is not an avenue for relitigating issues upon which the

moving party did not prevail at trial." *Material Supply Int'l*, 1997 WL 243223, at *2.  Instead, a

movant "who failed to prove his [or her] strongest case is not entitled to a second opportunity to

litigate a point, to present evidence that was available but not previously offered, or to advance

new theories by moving to amend a particular finding of fact or conclusion of law."  *Salazar v.*

*District of Columbia*, 685 F. Supp. 2d 72, 75 (D.D.C. 2010) (quoting 9C Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2582 (3d ed. 2009)); *see also Diocese of Winona v. Interstate Fire & Cas. Co.*, 89 F.3d 1386, 1397 (8th Cir. 1996) (finding that a party could not use a 52(b) motion to raise an argument that could have been raised prior to the entry of a judgment; *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986) (explaining that a Rule 52(b) motion should not be employed "to advance new theories").

### 2.   Federal Rule of Civil Procedure 59(e)

Federal Rule of Civil Procedure 59(e) permits a party to file "[a] motion to alter or amend a judgment" within "28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e). "Reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly," *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 17 (D.C. Cir. 2015) (quoting 11 Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2810.1 (3d ed. 2012)), and the moving party bears the burden of establishing "extraordinary circumstances" warranting relief from judgment, *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001).

Ultimately, "[a] Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)).  "New evidence" is evidence that "was not previously available," not simply evidence that a party had not previously presented.  *See Messina v. Krakower*, 439 F.3d 755, 759 (D.C. Cir. 2006).  And in the Rule 59(e) context, "clear error" is "a very exacting standard," *Bond v. U.S. Dep't of Justice*, 286 F.R.D. 16, 22 (D.D.C. 2012) (quoting *Lightfoot v. District of Columbia*, 355 F. Supp. 2d 414, 422 (D.D.C. 2005)), tantamount to a requirement that the

judgment be "dead wrong," *Lardner v. FBI*, 875 F. Supp. 2d 49, 53 (D.D.C. 2012) (quoting

*Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).  "Manifest

injustice," on the other hand, requires a demonstration not only of "clear and certain prejudice to

the moving party, but also a result that is fundamentally unfair in light of governing law."  *Slate

v. Am. Broad. Cos., Inc.*, 12 F. Supp. 3d 30, 35–36 (D.D.C. 2013).

Crucially, Rule 59(e) does not permit a dissatisfied party "to relitigate old matters, or to

raise arguments or present evidence that could have been raised prior to the entry of judgment."

*Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 Charles Wright & Arthur

Miller, *Federal Practice & Procedure* § 2810.1 (2d ed. 1995)).  The rationale for this rule is that

"Rule 59(e) motions are aimed at reconsideration, not initial consideration."  *GSS Grp. Ltd v.

Nat'l Port Auth.*, 680 F.3d 805, 812 (D.C. Cir. 2012) (quoting *District of Columbia v. Doe*, 611

F.3d 888, 896 (D.C. Cir. 2010)).  "It is well settled that an issue presented for the first time in a

motion pursuant to Federal Rule of Civil Procedure 59(e) generally is not timely raised."  *Doe*,

611 F.3d at 896 (quoting *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1999));

*see also Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012) ("Rule 59(e) is

not a vehicle to present a new legal theory that was available prior to judgment . . . .").  "The

strictness with which such motions are viewed is justified by the need to protect both the integrity

of the adversarial process in which parties are expected to bring all arguments before the court,

and the ability of the parties and others to rely on the finality of judgments."  *U.S. Commodity

Futures Trading Comm'n v. McGraw–Hill Cos.*, 403 F. Supp. 2d 34, 36 (D.D.C. 2005).

## B.  PLM's Motion to Amend the Judgment

PLM has moved to amend the judgment, arguing that PLM's U.S. Registration No.

3,210,304 for LA INDITA MICHOACANA should not be cancelled.  *See generally* PLM's Mot.

Amend.  Specifically, PLM refers to the Court's finding that PLM owns two prior incontestable

registered marks incorporating an Indian Girl design and argues that "a registered mark cannot

be cancelled if the registrant, PLM, has prior use of a mark that is likely to cause confusion with

the mark asserted by the challenger, PROLACTO."[11]  PLM's Mot. Amend at 4.  In its reply,

PLM clarifies that it believes PROLACTO does not have standing to challenge the LA INDITA

MICHOACANA mark because "PROLACTO cannot show that it would be damaged where . . .

the registrant, PLM, has one or more valid registrations for similar marks on similar goods that

were in existence before PROLACTO sought cancellation."  *See* Pls.' Reply Supp. Mot. Amend

J. ("PLM's Reply Supp. Mot. Amend") at 1, ECF No. 349.  PROLACTO raises a number of

responses, including arguments that PLM has not established the extraordinary circumstances

that are necessary to amend a judgment, that PLM's understanding of the law is flawed, and that

PLM's prior marks are not incontestable.  *See id.* at 3–14.

   The Court first turns to PROLACTO's motion seeking leave to file a surreply.  *See*

*generally* PROLACTO's Mot. Surreply; *see also* Def.'s Surreply or, in the Alternative, Mot.

Strike ("PROLACTO's Surreply"), ECF No. 351-1.  For the reasons stated below, the Court will

grant the motion in part and deny it in part.  The Court will consider PROLACTO's surreply

only on the question of standing.  Upon consideration of the parties' arguments, the Court will

---

[11] The purportedly incontestable marks are U.S. Registration No. 2,905,172 for the "Indian Girl with Paleta" design and U.S. Registration No. 2,968,652 for the "Indian Girl with Cone" design.  *See* PLM's Mot. Amend at 2; *see also PLM VI*, 188 F. Supp. 3d 22, 48 (D.D.C. 2016).  PROLACTO argues that the marks are not incontestable.  *See* Def.'s Opp'n Pls.' Mot. Amend Judgment ("PROLACTO's Opp'n Mot. Amend.") at 9–14, ECF No. 344; *see also* PROLACTO's Mot. Amend at 5–9.  The Court does not reach that issue for the purposes of deciding PLM's motion to amend.  But the Court does address this issue in the context of PROLACTO's motion to amend.  *See infra* Part IV.C.

deny PLM's motion to amend the judgment because a party cannot raise new theories for the first time in a motion to amend a judgment.

### 1. PROLACTO's Motion for Leave to File a Surreply

PROLACTO argues that it should be permitted to file a surreply because PLM impermissibly introduced facts and arguments related to two new arguments in its reply. *See* PROLACTO's Mot. Surreply at 4, 6–7. After setting forth the standard for granting leave to file a surreply, the Court will address the issues in turn.

Under the Local Rules of this Court, at most three briefs should be associated with a motion: "(i) the movant's opening memorandum; (ii) the non-movant's opposition; and (iii) the movant's reply." *Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 187 (D.D.C. 2012) (citing LCvR 7). However, the non-movant may seek leave to file a surreply when deprived of the opportunity to contest matters raised for the first time in the movant's reply. *See Ben–Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir. 2003). The determination as to whether to grant or deny leave is entrusted to the discretion of the district court, *see Akers v. Beal Bank*, 760 F. Supp. 2d 1, 2 (D.D.C. 2011), but surreplies are generally disfavored, *see Kifafi v. Hilton Hotels Retirement Plan*, 736 F. Supp. 2d 64, 69 (D.D.C. 2010). The court's discretion is guided by "whether the movant's reply in fact raises arguments or issues for the first time; whether the nonmovant's proposed surreply would be helpful to the resolution of the pending motion; and whether the movant would be unduly prejudiced were leave to be granted." *Glass v. Lahood*, 786 F. Supp. 2d 189, 231 (D.D.C. 2011), *aff'd*, No. 11-5144, 2011 WL 6759550 (D.C. Cir. Dec. 8, 2011).

First, PROLACTO argues that, "[f]or the first time in its Reply, PLM introduced facts and exhibits related to a blog post by Professor Rebecca Tushnet."[12]  PROLACTO's Mot. Surreply at 6.  In its reply in support of the motion to amend, PLM argues that the blog post's analysis "supports granting PLM's Motion to amend the judgment on Count I of the Complaint in favor of PLM."  PLM's Reply Supp. Mot. Amend at 8.  PROLACTO argues that a surreply is particularly warranted "in response to newly-introduced factual material."  PROLACTO's Mot. Surreply at 7.

The Court notes that a growing number of legal scholars are turning to blogs and other online media to publish their work and to consider important legal questions.  *See, e.g.*, Eugene Volokh, *Who are we?*, Volokh Conspiracy (Jan. 16, 2014), https://www.washingtonpost.com/ news/volokh-conspiracy/who-are-we/ (listing law professors who write for the Volokh Conspiracy); *About Us*, RegBlog, http://www.regblog.org/about-us/ (last visited Mar. 30, 2017) ("*RegBlog* features work contributed by staff members, scholars, judges, attorneys, and others interested in regulatory developments.").  PLM makes clear that it "does not seek to admit the blog into the evidentiary record, or seek to admit any testimony from Professor Tushnet, whether as a lay or expert witness."  Pl.'s Opp'n Def.'s Mot. Leave File Surreply or, in the Alternative, Mot. Strike at 4 ("PLM's Opp'n Mot. Surreply"), ECF No. 355.  Therefore, the Court will treat the reference to the blog post the same way it would treat a citation to a law review article.  The blog post is not new factual material.  Instead, the reference to the blog post simply supports

---

[12] Professor Tushnet teaches at Georgetown University Law Center.  *See* PLM's Reply Supp. Mot. Amend at 8 n.6.

arguments originally raised in the motion, and there is no need for PROLACTO to have another chance to respond.[13]  *See Glass*, 786 F. Supp. 2d at 231.

Second, PROLACTO argues that PLM raised arguments related to standing for the first time in its reply brief.  *See* PROLACTO's Mot. Surreply at 7.  In response, PLM asserts that its original motion briefed the question of standing.  *See* PLM's Opp'n Mot. Surreply at 5.  PLM argues that it "cited to a number of cases on the issue of standing in its motion to amend the judgment, and . . . devoted almost half of its motion to argue that PROLACTO's cancellation claim should be dismissed for lack of standing."  PLM's Opp'n Mot. Surreply at 5.  PLM's characterization is misleading.  In fact, while PLM's motion to amend argues that "PROLACTO cannot meet its burden of proof to cancel its registration," the motion never mentions the term "standing."  *See* PLM's Mot. Amend at 5.  In contrast, nearly five of the eleven pages of argument in PLM's reply focus specifically on the question of standing.  *See* PLM's Reply Supp. Mot. Amend 2–6.  The Court finds that the standing argument is "truly new," *United States v. Baroid Corp.*, 346 F. Supp. 2d 138, 143 (D.D.C. 2004), and that PROLACTO's "proposed surreply would be helpful to the resolution of the pending motion," *Glass*, 786 F. Supp. 2d at 231.  Therefore, the Court will grant PROLACTO's motion in part and consider the surreply to the extent it addresses the issue of standing.

### 2.  The *Morehouse* Defense

The thrust of the litigation related to Count I has turned on two crucial issues.  First, the parties dispute the relative priority of PLM's LA INDITA MICHOACANA mark and

---

[13] Furthermore, the Court does not rely on the blog post in reaching a decision, so there is no need to consider PROLACTO's additional briefing.  *See United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d 191, 205 (D.D.C. 2011) ("[S]ince the Court does not rely upon any of the arguments of the United States to which UTICo wishes to respond by filing a surreply, UTICo's motion for leave to file a surreply will also be denied.").

PROLACTO's unregistered Indian Girl mark.  The Court decided that PROLACTO had the

better side of that argument, finding that "PROLACTO has demonstrated that it used its Indian

Girl mark before PLM used its LA INDITA MICHOACANA mark."  *PLM VI*, 188 F. Supp. 3d

22, 101 (D.D.C. 2016).  The parties also dispute whether the tacking doctrine applies and

therefore the priority date of PLM's LA INDITA MICHOACANA mark can be advanced to the

date that PLM first used *any* Indian Girl mark.  Again, PROLACTO prevailed after the Court

found that, "particularly without any evidence of consumers' perceptions, the Court cannot find

that PLM's LA INDITA MICHOACANA mark meets the 'exceedingly strict' standard for

tacking."  *Id.* at 60 (quoting *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d

1036, 1048 (9th Cir. 1999)).

The ultimate result is that PROLACTO's unregistered Indian Girl design is confusingly

similar to, and thus infringes, PLM's earlier, registered Indian Girl marks, *see id.* at 107, but,

because tacking does not apply, PROLACTO's mark has priority over LA INDITA

MICHOACANA and the registration of LA INDITA MICHOACANA must be cancelled.  *Id.* at

101.  The Court's Findings of Fact and Conclusions of Law noted:

> In its proposed findings of fact and conclusions of law, PLM argues that "even
> without applying the tacking doctrine," it has priority of use for an Indian Girl
> design, citing its Indian Girl with Paleta mark.  Pls.' Br. at 85 ¶ 90; *see also id.* at
> 59 ¶ 19 ("PLM has priority in both the Indian Girl Design and in 'Michoacana.'
> Therefore [sic], the registration for LA INDITA MICHOACANA + Design should
> not be cancelled and PLM should prevail on its First Claim for Relief.").  The
> Court has indeed found that PLM used its Indian Girl with Paleta and Indian Girl
> with Cone marks before PROLACTO used its Indian Girl mark in the United
> States, and the Court considers those findings with respect to the infringement
> claims in this action. With respect to [Count I], however, PLM does not provide
> the Court with any legal basis to deny PROLACTO's cancellation petition on the
> basis of PLM's earlier use of *other* marks in the absence of tacking—even if
> PLM's earlier marks are confusingly similar to PROLACTO's asserted mark.
> Instead, PLM offers only the conclusive statements quoted above without any
> citations or further explanation.  In the absence of any substantive legal argument,

> the Court cannot find grounds on its own to consider PLM's earlier use of other
> marks outside the context of the tacking doctrine.

*Id.* at 100 n.54 (first alteration in original).  PLM is now attempting to provide the legal basis to

deny PROLACTO's cancellation petition that it failed to raise before.

In its motion to amend the judgment, PLM asserts that the Court "correctly recited" the

legal standard when it found that "a mark cannot be registered if another owner has prior use of a

mark or trade name that is likely to cause confusion with the asserted mark."  PLM's Mot.

Amend at 4 (quoting *PLM VI*, 188 F. Supp. 3d at 99).  In the next sentence, PLM reformulates

the standard to state that "a registered mark *cannot be cancelled* if the *registrant* . . . has prior use

of a mark that is likely to cause confusion with the mark asserted by the challenger."  PLM's

Mot. Amend at 4.  PLM seems to assert that its version of the rule is a direct and accurate

translation of the proper cancellation standard the Court articulated.  That is not correct.  Instead,

as PLM's citations and subsequent reply make clear, PLM is relying on an equitable defense

known as the "*Morehouse* defense" or the "prior registration" defense."[14]

Under the *Morehouse* defense, the party seeking cancellation of a mark cannot be

damaged if the registrant already "owns an existing registration for the same or substantially

identically mark for the same or substantially identical goods."  3 J. Thomas McCarthy,

*McCarthy on Trademarks & Unfair Competition* ("McCarthy on Trademarks") § 20:38 (4th ed.

2016).  The *Morehouse* defense "is related to the equitable defenses of laches or acquiescence."

*Coach/Braunsdorf Affinity, Inc. v. 12 Interactive, LLC*, 110 U.S.P.Q.2d 1458, 2014 WL

1390528, at *13 (T.T.A.B. 2014).  Summarizing the rule, the Federal Circuit has explained that

"[t]he prior registration or *Morehouse* defense is an equitable defense, to the effect that if the

---

[14] The *Morehouse* defense is named for *Morehouse Manufacturing Corp. v. J. Strickland & Co.*, 407 F.2d 881 (C.C.P.A. 1969).

opposer can not be further injured because there already exists an injurious registration, the opposer can not object to an additional registration that does not add to the injury." *O-M Bread, Inc. v. U.S. Olympic Comm.*, 65 F.3d 933, 938 (Fed. Cir. 1995). The defense is available in both cancellation and opposition proceedings. *See* McCarthy on Trademarks §§ 20:38, 20:78. PLM has now raised the *Morehouse* defense in its motion to amend the judgment. *See* PLM's Mot. Amend at 5; *see also* PLM's Reply Supp. Mot. Amend at 3.

### 3.   Waiver

The question before the Court is whether PLM can rely on the *Morehouse* defense at this stage of the litigation. As the Court has explained, Rule 59 does not permit a dissatisfied party "to raise arguments . . . that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2810.1 (2d ed. 1995)). Furthermore, "[i]t is well settled that an issue presented for the first time in a motion pursuant to Federal Rule of Civil Procedure 59(e) generally is not timely raised." *District of Columbia v. Doe*, 611 F.3d 888, 896 (D.C. Cir. 2010) (quoting *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1999)). The strictness of this rule is not arbitrary. The rule "is justified by the need to protect both the integrity of the adversarial process in which parties are expected to bring all arguments before the court, and the ability of the parties and others to rely on the finality of judgments." *U.S. Commodity Futures Trading Comm'n v. McGraw–Hill Cos.*, 403 F. Supp. 2d 34, 36 (D.D.C. 2005).

PLM makes two arguments on this point. First, PLM argues that PROLACTO lacks standing to challenge PLM's registration and that standing arguments are not waivable. *See* PLM's Reply Supp. Mot. Amend at 2–6. Second, PLM argues that it has "pleaded and argued

standing since inception."  PLM's Reply Supp. Mot. Amend at 6 n.5.  The Court will address these arguments in turn.

   *a.  PLM Conflates Constitutional Standing and Statutory Standing Under the Lanham Act*

   PLM's standing argument relies on the *Morehouse* defense.  PLM begins with the correct proposition that a "party must have standing to challenge a trademark registration."  PLM's Reply Supp. Mot. Amend at 2 (citing *Nobelle.com, LLC v. Qwest Commc'ns Int'l, Inc.*, 66 U.S.P.Q.2d 1300, 1303 (T.T.A.B. 2003)).  The Lanham Act provides that "petition to cancel a registration of a mark . . . may . . . be filed . . . by any person who believes that he is or will be *damaged . . .* by the registration of the mark."[15]  15 U.S.C. § 1064 (emphasis added).  Next, PLM incorporates the *Morehouse* defense, which states that "the opposer cannot be *damaged . . .* by the issuance to the applicant of a second registration where applicant already has an existing registration of the same mark for the same goods."  *Morehouse Mfg. Corp. v. J. Strickland & Co.*, 407 F.2d 881, 884 (C.C.P.A. 1969) (emphasis added).  Up to this point, PLM's argument is that PROLACTO cannot be damaged by the registration of the LA INDITA MICHOACANA mark, and thus PROLACTO lacks standing.  *See* PLM's Reply Supp. Mot. Amend at 2–5.

   Next, PLM argues that this argument cannot be waived, because "standing is not subject to waiver."  PLM's Reply Supp. Mot. Amend at 5.  As courts of limited jurisdiction, federal courts are "under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'"  *United States v. Hays*, 515 U.S. 737, 742 (1995) (alteration in original) (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230–231 (1990)).  Furthermore, as PLM correctly points out, because standing is a jurisdictional

---

[15] The Lanham Act's threshold for standing is the same in a context of a petition to cancel or an opposition to a registration.  *See Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1028–29 (C.C.P.A. 1982); McCarthy on Trademarks § 20:46.

requirement, it "remains open to review at all stages of litigation."  PLM's Reply Supp. Mot.

Amend at 6 (quoting *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249 (1994)).  Thus, PLM

concludes that—even at this late stage of the litigation—it can raise the *Morehouse* defense

through the trapdoor of standing.

The problem with PLM's clever argument is that it incorrectly conflates the constitutional

"case or controversy" requirement with the standing requirement found in the Lanham Act.

Article III of the United States Constitution requires the plaintiff to make out a "case or

controversy" in order to have standing to sue in federal court.  *See Warth v. Seldin*, 422 U.S. 490,

498 (1975).  PLM relies on this constitutional form of standing when it argues that a court must

consider standing arguments at all stages of the litigation and those arguments cannot be waived.

*See* PLM's Reply Supp. Mot. Amend at 5–6.  But the standing requirements to proceed before an

administrative agency are not the same.  *See Ritchie v. Simpson*, 170 F.3d 1092, 1094 (Fed. Cir.

1999); *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 729 F. Supp. 2d 246, 251

(D.D.C. 2010).  Statutory law, not the "case or controversy" requirement, determines the

standing requirements for matters brought before an agency.  *See Ritchie*, 170 F.3d at 1095

(collecting cases).  A federal court must always be alert to constitutional standing problems

because they implicate the court's jurisdiction.  *See Hays*, 515 U.S. at 742.  But PLM has

presented no authority that the Lanham Act's *statutory* standing requirement implicates similar

jurisdictional concerns.

At any rate, the Court finds that PROLACTO has standing under the generous standard

of the Lanham Act.  The relevant provision grants standing to any party that "believes that he

would be damaged by the registration of a mark."  15 U.S.C. § 1063.  The party must only show

a "real interest" in the proceedings and a "reasonable basis" for his belief of damage.  *See*

*Ritchie*, 170 F.3d at 1095.  The requirement for standing is "fairly easy to satisfy in the vast

majority of cases."  McCarthy on Trademarks § 20:46.  The TTAB had no doubt that PROLACTO

had standing.  *See Productos Lacteos Tocumbo S.A. De C.V. v. Paleteria La Michoacana, Inc.*,

98 U.S.P.Q.2d 1921, 2011 WL 2161071, at *8–9 (T.T.A.B. 2011).  This Court agrees.

For the purposes of evaluating standing under the Lanham Act, a "real interest" is a

"direct and personal stake in the outcome of the" opposition or cancellation.  *Ritchie*, 170 F.3d at

1095.  A party must also have a "reasonable basis in fact" for its belief in damages, although a

purely subjective belief is insufficient.  *Id.* at 1098 (quoting *Universal Oil Prods., Co. v. Rexall*

*Drug & Chem. Co.*, 463 F.2d 1122 (C.C.P.A. 1972)).  In light of the competing, confusing marks

at issue and the fact that PLM and PROLACTO are direct competitors, PROLACTO has a

"direct and personal stake" in the outcome of the cancellation and a "reasonable basis in fact"

that it could be damaged.[16]  *Cf. Guantanamera Cigar Co.*, 729 F. Supp. 2d at 252 ("Given the

---

[16] PLM is correct that one of the TTAB decisions it relies on seems to conflate standing and the *Morehouse* defense.  *See Place for Vision, Inc. v. Pearle Vision Ctr., Inc.*, 218 U.S.P.Q. 1022, 1983 WL 51990, at *1 (T.T.A.B. 1983) ("An opposer cannot suffer damage, within the meaning of Section 13 of the Trademark Act, by the issuance of a registration if the applicant for such registration already owns an unchallenged registration of that mark for the same goods." (citing *Morehouse Mfg. Corp. v. J. Strickland & Co.*, 407 F.2d 881 (C.C.P.A. 1969)).  Notably, the *Place for Vision* decision does not use the term "standing."  Recent decisions, before both federal courts and the TTAB, consistently evaluate the *Morehouse* defense as an affirmative defense, not an obstacle to standing.  *See, e.g.*, *O-M Bread*, 65 F.3d at 938 ("The prior registration or *Morehouse* defense is an equitable defense . . . ."); *Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n.*, 333 F. Supp. 2d 975, 986 (D. Or. 2004) ("[T]he prior-registration or *Morehouse* doctrine has been described as 'an equitable defense in the nature of laches or acquiescence.'" (quoting McCarthy on Trademarks § 20:38)), *aff'd* 465 F.3d 1102 (9th Cir. 2006).  A recent TTAB decision considering consolidated opposition proceedings, for instance, noted that, "[i]n none of the proceedings has standing been contested," and then separately considered the application of the *Morehouse* defense to one of the oppositions.  *See Mag Instrument, Inc. v. Brinkmann Corp.*, 96 U.S.P.Q.2d 1701, 2010 WL 3253200, at *7–8 (T.T.A.B. 2010); *see also Blackhorse v. Pro Football, Inc.*, 98 U.S.P.Q.2d 1633, 2011 WL 1886402, at *6 (T.T.A.B. 2011) ("Lack of standing is not an affirmative defense.  Standing is an element of petitioners' claim.").

global economy, it seems fairly obvious that Habanos' mark is more valuable if no one owns the GUANTANAMERA mark in the U.S., even if Habanos does not.").

Furthermore, to the extent constitutional standing is relevant here, the analysis turns on *PLM's* standing, not PROLACTO's.  The Supreme Court has made clear that the *plaintiff* bears the burden of establishing standing.  *See DaimlerChrysler Corporation v. Cuno*, 547 U.S. 332, 342 n.3 (2006).  The constitutional standing analysis considers whether the plaintiff has experienced an injury that is fairly traceable to the defendant and redressable by the court.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  Furthermore, the plaintiff must demonstrate standing for each separate claim.  *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153 (2010).  As the Plaintiff in this action, PLM, not PROLACTO, brought Count I seeking reversal of the TTAB decision.  *See* 2d Am. Compl. ¶¶ 42–48.  Therefore, any constitutional standing inquiry would examine PLM, not PROLACTO.[17]

Thus, the Court concludes that the *Morehouse* defense does not implicate constitutional standing in this case.  Therefore, the Court rejects PLM's argument that the *Morehouse* defense cannot be waived because it raises standing concerns.  To the contrary, a party's litigation conduct can generally waive affirmative defenses, including equitable defenses.  *See Jones v. D.C. Dep't of Corr.*, 429 F.3d 276, 280 (D.C. Cir. 2005) ("We conclude the district court erred in

---

[17] Because PLM is the Plaintiff, the Court does not need to address the complicated question of whether statutory standing in an administrative proceeding necessarily gives the party constitutional standing to appeal the outcome of that proceeding in federal court.  *See* 13B Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 3531.13 (3d ed. 2016) (asserting that "there are strong reasons to extend . . . administrative standing into standing for judicial review," but noting that "many cases adhere to the view that recognition of standing to appear in agency proceedings does not of itself establish Article III standing to seek judicial review").  *Cf. Fund Democracy, LLC v. SEC*, 278 F.3d 21, 27 (D.C. Cir. 2002) ("Because agencies are not constrained by Article III, they may permit persons to intervene in the agency proceedings who would not have standing to seek judicial review of the agency action.").

granting summary judgment based on the *Faragher–Ellerth* defense in a case in which the defense had not been raised in the pleadings."); *Dole v. Williams Enterprises, Inc.*, 876 F.2d 186, 189 (D.C. Cir. 1989) (footnote omitted) ("[O]ur understanding of affirmative defenses, buttressed by years of experience under Rule 8(c) . . . , is that these defenses place the burden on the party raising them to affirmatively plead the claim . . . ."); *Ruffin v. New Destination*, 800 F. Supp. 2d 262, 268 (D.D.C. 2011) ("Defendants did not raise this affirmative defense in their answer, and therefore it is waived."); *see also* Fed. R. Civ. P. 8(c) (requiring the pleading of affirmative defenses).  For PLM to rely on the *Morehouse* defense at this late stage in the litigation, it must demonstrate that it has preserved the issue by raising the argument at the proper time.

### b.  PLM has not Preserved an Argument Relying on the Morehouse Defense

PLM argues that it "never waived any argument as to standing; rather, PLM has pleaded and argued standing since inception."  PLM's Reply Supp. Mot. Amend at 6 n.5.  This again misstates the argument that is subject to waiver.  As the Court has previously explained, PLM is now seeking to rely on the *Morehouse* defense, an equitable defense, not standing, which is an element of a petitioner's claim that guarantees that the party has a minimum, threshold interest in cancelling or opposing a registration.  *See supra* Part IV.B.2–3.a.  Thus, the Court will review the extensive record in this litigation, as well as consider instances where PLM claims it "pleaded and argued" standing, to determine whether PLM raised the *Morehouse* defense at those times.

The parties' briefs related to a motion in limine contain the most significant discussion of the *Morehouse* defense in this litigation.  Before trial, PROLACTO filed a motion to prevent PLM from raising tacking arguments.  *See* Def.'s Mot. In Limine & Supp. Mem. Exclude Any

"Tacking" Arguments ("PROLACTO's Tacking MIL"), ECF No. 185.  PROLACTO's motion

incorrectly conflated tracking with the *Morehouse* defense.  PROLACTO's Tacking MIL at 7.

In response, PLM more accurately laid out the parameters of the *Morehouse* defense, as well as

its differences from tacking.  *See* Pls.' Opp'n Def.'s Mot. In Limine Exclude Any "Tacking"

Arguments ("PLM's Opp'n Tacking MIL") at 5, ECF No. 192.

   At that time, PLM also argued that the "*Morehouse* defense is entirely irrelevant to

PROLACTO's counterclaims and therefore, PLM did not have any obligation to plead it in its

Answer in this district court action."  PLM's Opp'n Tacking MIL at 6.  However, PLM also

argued that it *did* raise the *Morehouse* defense at the TTAB and contended that the TTAB

reached the wrong result when it determined that PLM had not pleaded the defense.  *See* PLM's

Opp'n Tacking MIL at 6; *see also Productos Lacteos Tocumbo*, 98 U.S.P.Q.2d 1921, 2011 WL

2161071, at *5 (finding that PLM did not plead the *Morehouse* defense).  In support of that

conclusion, PLM points to its Answer in the TTAB proceedings, which states that "[PLM]

alleges [PROLACTO] is not likely to be damaged by Registrant's mark, and therefore, lacks

standing to cancel the registration of the same."  PLM's Opp'n Tacking MIL, Ex. A at 5, ECF

No. 192-1.

   The Court is not convinced that this discussion preserves PLM's ability to rely on the

*Morehouse* defense.  First, PLM explicitly argued that it "had no obligation or opportunity to

plead the *Morehouse* 'prior registration' in this district court action."  PLM's Opp'n Tacking

MIL at 5.  Second, the Court notes that the Answer PLM filed in the TTAB action contains a

general defense that does not reference PLM's prior registration of its two Indian Girl marks or

the *Morehouse* defense in general.  Third, the discussion appears in the context of PLM's

opposition to one of PROLACTO's motions in limine.  PLM had many opportunities to raise this

issue in its motion for summary judgment, at trial, or in its post-trial briefing.  But PLM never raised the issue in any developed way.

For instance, PLM contends that it preserved this argument by raising it in one of the footnotes in its post-trial brief.  *See* PLM's Reply Supp. Mot. Amend at 6 n.5.  The relevant portion of that footnote states:

> After receiving the Office Action [refusing registration of its Indian Girl design], PROLACTO did not oppose or otherwise seek to prevent registration of PLM's then-pending application for LA INDITA MICHOACANA and Design, or seek to cancel PLM's two registered marks. This fact weighs in favor of concluding that PROLACTO acquiesced to the registration of PLM's "LA INDITA MICHOACANA + Design" mark, and also demonstrates PROLACTO's delay in asserting its rights such that PROLACTO's claims should be barred under the doctrine of laches, as explained further below.

*See* Pl.'s [Proposed] Findings of Fact and Conclusions of Law ("PLM's Post-Trial Brief") ¶ 112 n.39, ECF No. 309.  The footnote mentions acquiescence and PLM's two registered marks, but it provides no citation to authority or structured legal argument.  The footnote appears in a section of the brief dedicated to the separate issue of estoppel.  *See* PLM's Post-Trial Brief ¶¶ 111–26. In fact, PLM's proposed findings of fact and conclusions of law total more than 120 pages, but PLM can only point to a single, unsupported sentence in a footnote.[18]  That reference is not sufficient to preserve the right to raise this issue.

The D.C. Circuit has made clear that "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work."  *New York Rehab. Care Mgmt., LLC v. NLRB*, 506 F.3d 1070, 1076 (D.C. Cir. 2007); *see also Armstrong v.*

---

[18] PLM also points to another footnote in its post-trial brief, *see* PLM's Reply Supp. Mot. Amend at 6 n.5, but the Court fails to understand how that footnote raises the *Morehouse* defense, even if generously construed, *see* PLM's Post-Trial Brief at ¶ 148 & n.46.  Instead, the relevant paragraph discusses laches, *see id.*, which is a distinct equitable defense, *see* McCarthy on Trademarks § 20:74.  The cases cited in the paragraph that contains the footnote all specifically address the doctrine of laches.  *See* PLM's Post-Trial Brief at ¶ 148.

*Geithner*, 608 F.3d 854, 858 n.** (D.C. Cir. 2010) (a court is not required to "address an argument raised only cursorily in a footnote.").  Another court in this district refused to consider an argument on reconsideration, where the party originally "gestured at the issue in a two-sentence footnote" and "made no attempt to explain how [the relevant] standard applie[d] in [that] case."  *GSS Grp. Ltd. v. Nat'l Port Auth.*, No. 09-1322, 2011 WL 13121428, at *5 (D.D.C. Aug. 10, 2011).

In a similar vein, the D.C. Circuit upheld a decision denying a motion for reconsideration on the question of duress where the party "mention[ed] duress only in passing and le[ft] any possible duress 'argument' entirely undeveloped."  *See Keyes v. District of Columbia*, 372 F.3d 434, 437, 439 (D.C. Cir. 2004) (alterations in original).  Other circuits have reached similar conclusions.  *See, e.g.*, *Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 790–91 (10th Cir. 2013) (finding that "the district court correctly concluded that the Muskrats had never raised a Fourth Amendment argument before their post-summary judgment Rule 59(e) motion" where they included only a "single reference to the Fourth Amendment");  *Lekas v. Briley*, 405 F.3d 602, 614 n.8 (7th Cir. 2005) ("These statements alone—made without any reference to relevant legal authority, and strewn about in his brief in the context of defending other, well-articulated claims—do not suffice to mount a legal argument . . . .");  *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (explaining in a different context that "[j]udges are not like pigs, hunting for truffles buried in briefs").  The Court finds that this footnote fails to preserve the issue of the *Morehouse* defense because it alludes to the issue only opaquely—if at all—and it does not provide any legal argument or authority.

The remainder of PLM's purported instances of preserving the *Morehouse* defense are also unavailing.  First, PLM argues that its Answer to PROLACTO's Counterclaims "pleaded

lack of standing or likelihood of damage." PLM's Reply Supp. Mot. Amend at 6 n.5. The

defense simply states that PROLACTO "has not been damaged in any amount, manner, or at all

by reason of any act alleged against PLM." Pls.' Answer to Cross-Action & Counterclaims

("PLM's Answer") at 15, ECF No. 42. The general language in that affirmative defense does not

specifically refer to the *Morehouse* defense, and without subsequent argument, fails to preserve

the issue after the Court has issued a judgment.

Second, PLM argues that it also pleaded laches and acquiescence in its Answer. *See*

PLM's Reply Supp. Mot. Amend at 6 n.5 (citing PLM's Answer at 15). It is true that the

*Morehouse* defense is "an equitable defense in the nature of laches or acquiescence." *Tillamook*

*Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n.*, 333 F. Supp. 2d 975, 986 (D. Or. 2004)

(quoting McCarthy on Trademarks § 20:38), *aff'd* 465 F.3d 1102 (9th Cir. 2006). But simply

referring to the defenses of laches and acquiesce is not the same as raising the *Morehouse*

defense. Although these doctrines are surely related, they are not identical. PLM's briefing, in

fact, specifically addresses laches and acquiescence, without raising the *Morehouse* defense.

*See, e.g.*, Pls.' Mot. Partial Summ. J. at 37, ECF No. 114 (arguing that PROLACTO should not

be awarded monetary relief because of the doctrines of acquiesce and laches); Pls.' Opp'n to

Def.'s Mot. Summ. J. at 42, ECF No. 120 (arguing that laches bars all of PROLACTO's claims).

The Court finds that those references to equitable doctrines generally do not preserve an

argument under the *Morehouse* defense.

The Court has reviewed the instances where PLM argues it previously raised the

*Morehouse* defense. The Court finds that PLM has not previously raised this argument, and

therefore cannot raise it here for the first time on reconsideration. *See District of Columbia v.*

*Doe*, 611 F.3d 888, 896 (D.C. Cir. 2010). Enforcing this rule "protect[s] both the integrity of the

adversarial process in which parties are expected to bring all arguments before the court, and the ability of the parties and others to rely on the finality of judgments." *U.S. Commodity Futures Trading Comm'n v. McGraw–Hill Cos.*, 403 F. Supp. 2d 34, 36 (D.D.C. 2005). This result also accords with the fact that amendment of a judgment under Rule 59(e) is an "extraordinary remedy which should be used sparingly." *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 17 (D.C. Cir. 2015) (quoting 11 7C Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2810.1 (3d ed. 2012)). In light of this standard, the Court denies PLM's motion to amend the judgment because PLM has not preserved any argument based on the *Morehouse* defense.[19]

### C. PROLACTO's Motion to Amend Findings and to Amend the Judgment

PROLACTO has also moved to amend the Court's findings and to amend the judgment. *See generally* PROLACTO's Mot. Amend. PROLACTO argues that the Court should amend its finding that two of PLM's Indian Girl marks are incontestable, which in turn requires amendment of the Court's judgment on Count III. Specifically, PROLACTO argues that "Count III should be dismissed and the permanent injunction vacated." PROLACTO's Mot. Amend at 3. In response, PLM contends that PROLACTO waived the argument by failing to raise it at the proper time, that PROLACTO's incontestability argument is incorrect, and that PROLACTO's argument is irrelevant because the marks in question are presumptively valid, even if they are not incontestable. *See* Pls.' Opp'n Def.'s Mot. Amend Findings & Amend the Judgment ("PLM's Opp'n Mot. Amend") at 1–2, ECF No. 353. For the reasons explained below, the Court will

---

[19] Because the Court finds that PLM has waived any argument based on the *Morehouse* defense, the Court does not reach the merits of that argument.

deny PROLACTO's motion because it has waived the incontestability argument by failing to

raise it in a timely manner.

### 1.  The Court's Findings and Judgment

The Court addressed the incontestability of two of PLM's Indian Girl marks in its

findings of facts.  *See PLM VI*, 188 F. Supp. 3d 22, 48 (D.D.C. 2016).  The Court found that:

> PLM, Inc., which owned the marks as the successor to Ignacio Gutierrez's sole
> proprietorship, filed applications to register both the Indian Girl with Paleta and
> Indian Girl with Cone marks on November 19, 2003.  The USPTO issued
> Registration No. 2,905,172 for the Indian Girl with Paleta on November 23, 2004
> and issued Registration No. 2,968,652 for the Indian Girl with Cone on July 12,
> 2005.  *See* Pls.' Exs. 35 and 36.  Both registrations became "incontestable"
> pursuant to 15 U.S.C. § 1065 on December 12, 2014 upon PLM's filing of
> Section 15 affidavits with the USPTO.

*Id.*

In its consideration of PLM's Count III, the Court concluded that "PLM's registrations

for its Indian Girl with Paleta and Indian Girl with Cone have become incontestable pursuant to

§ 1065," and rejected "PROLACTO's various arguments contesting the validity of the marks and

PLM's ownership of them."  *Id.* at 105.  In a footnote, the Court also noted that PROLACTO had

not "attempt[ed] to belatedly assert or cite any of the enumerated defenses to incontestability in

its proposed findings of fact and conclusions of law, though it 'disputes' the incontestability of

PLM's marks without providing any explanation."  *Id.* at 105 n.58.

Ultimately, the Court held that "PROLACTO's use of PLM's registered, incontestable

trademarks constitutes infringement under 15 U.S.C. § 1114(1)(a)" and the Court "enter[ed]

judgment on Count III for PLM accordingly."  *Id.* at 107.  Now, PROLACTO moves to amend

the Court's findings and judgment on this issue.  *See generally* PROLACTO's Mot. Amend.

2.  PROLACTO's Incontestability Argument

PROLACTO's argument turns on the validity of PLM's Section 15 affidavits.  Section 15 of the Lanham Act sets forth the conditions that allow a registered mark to become "incontestable" after it has been in continuous use for five consecutive years.  *See* 15 U.S.C. § 1065.  A mark can only become incontestable if: "(1) there has been no final decision adverse to the owner's claim of ownership of such mark for such goods or services, or to the owner's right to register the same or to keep the same on the register; and (2) there is no proceeding involving said rights pending in the United States Patent and Trademark Office or in a court and not finally disposed of."  *Id.* § 1065(1)–(2).  A Section 15 affidavit filed with the USPTO must state that the mark meets these requirements, among others.  *See* § 1065(3); 37 C.F.R. § 2.167.

PROLACTO argues that PLM "could not meet that standard when it filed the two Section 15 affidavits on November 21, 2014."  PROLACTO's Mot. Amend. at 6.  Each of the affidavits, which PLM's counsel in this litigation filed with the USPTO, states:

> There has been no final decision adverse to the owner's claim of ownership of such mark for such goods/services, or to the owner's right to register the same or to keep the same on the register; and there is no proceeding involving said rights pending and not disposed of either in the United States Patent and Trademark Office or in a court.

PROLACTO's Mot. Amend, Decl. of Stephen L. Anderson ("1st Anderson Decl."), Exs. A & C.  PROLACTO notes that PLM filed the affidavits on the same day that the parties participated in a teleconference in this case.  *See* PROLACTO's Mot. Amend at 8 (citing Min. Entry (Nov. 21, 2014)).  PROLACTO argues that the affidavits were "knowingly false" because the "validity and ownership of PLM's asserted Indian Girl Design registrations were still pending."  PROLACTO's Mot. Amend at 8.

In this action, PROLACTO sought the cancellation of the two Indian Girl registrations because of fraud and abandonment.  *See* Ans. 2d Am. Compl. & Countercls. ¶¶ 64–87 (setting

forth Counterclaim Counts V-VII).  The Court's ruling on the parties' cross-motions for partial

summary judgment ruled in favor of PLM on those Counterclaims.  *See PLM IV*, 69 F. Supp. 3d

175, 223–27 (D.D.C. 2014).  PROLACTO correctly notes that the Court subsequently stated that

the summary judgment ruling was an interlocutory order.  *See* Mem. & Order at 3, ECF No. 174;

*see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision . . . that adjudicates fewer than all

the claims . . .  does not end the action as to any of the claims or parties and may be revised at

any time before the entry of a judgment adjudicating all the claims . . . .").  Thus, PROLACTO

concludes that—contrary to both Section 15 and PLM's affidavits—the validity of PLM's Indian

Girl designs was still the subject of a pending proceeding.[20]

PROLACTO also addresses the Notices of Acknowledgement of the declarations issued

by the USPTO, which state that "[t]he affidavit of incontestability filed in connection with the

registration identified below meets the requirements of Section 15 of the Trademark Act, 15

U.S.C. § 1065.  The affidavit is acknowledged."  *See* 1st Anderson Decl., Exs. B & D.  The

acknowledgment process requires verification that the affidavit contains all of the necessary

information.  *See* 37 C.F.R. § 2.167(i).  When USPTO acknowledges a Section 15 affidavit, it

does not "accept" it, but instead the "function . . . is the ministerial one of receiving said

affidavits and noting their receipt."  *Arman's Systems, Inc. v. Armand's Subway, Inc.*, 215

U.S.P.Q. 1048, 1982 WL 54195, at *2 n.2 (T.T.A.B. 1982).  The Trademark Manual of

Examining Procedure states that "[t]he question of whether the registration is incontestable arises

---

[20] PLM argues "that at the time PLM filed the affidavits of incontestability, there was

no pending counterclaim challenging PLM's Indian Girl With Paleta and Indian Girl
With Cone

registrations because this Court had entered summary judgment on those claims in PLM's
favor."  PLM's Opp'n Mot. Amend at 11.  For the reasons explained below, the Court does not
reach the merits of the parties' arguments on this point.

and is determined by a court if there is a proceeding involving the mark." *Trademark Manual of Examining Procedure* § 1605 (Jan. 2017 ed.), https://tmep.uspto.gov/RDMS/TMEP/current#/current/TMEP-1600d1e1463.html.

After raising these issues, PROLACTO argues that the Court should amend its findings to remove any reference to the incontestability of PLM's Indian Girl registrations. *See* PROLACTO's Mot. Amend at 9. PROLACTO also makes a related argument that "no evidence regarding the purported incontestability of the Indian Girl Designs was timely or properly introduced into evidence into this case." PROLACTO's Mot. Amend at 5. In light of its suggested factual amendment, PROLACTO asserts that the Court must also amend its judgment to dismiss Count III and vacate the permanent injunction. PROLACTO's Mot. Amend at 14.

### 3. Waiver

The question before the Court is whether PROLACTO can rely on its incontestability argument at this stage of the litigation. A Rule 52(b) motion to amend factual findings does not provide a "second opportunity . . . to advance new theories by moving to amend a particular finding of fact or conclusion of law." *Salazar v. District of Columbia*, 685 F. Supp. 2d 72, 75 (D.D.C. 2010) (quoting 9C Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2582 (3d ed. 2009)); *see also Diocese of Winona v. Interstate Fire & Cas. Co.*, 89 F.3d 1386, 1397 (8th Cir. 1996) (finding that a party could not use a 52(b) motion to raise an argument that could have been raised prior to the entry of a judgment); *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986) (explaining that a Rule 52(b) motion should not be employed "to advance new theories").

Similarly, as the Court noted in the context of PLM's motion to amend, a Rule 59(e) motion to amend a judgment is not an escape hatch "to raise arguments . . . that could have been

raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2810.1 (2d ed. 1995)). And, "[i]t is well settled that an issue presented for the first time in a motion pursuant to Federal Rule of Civil Procedure 59(e) generally is not timely raised." *District of Columbia v. Doe*, 611 F.3d 888, 896 (D.C. Cir. 2010) (quoting *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1999)). In fact, several courts have noted that the standard for a 52(b) motion is nearly identical to the standard under Rule 59(e). *See, e.g.*, *Covertech Fabricating, Inc. v. TVM Bldg. Prod., Inc.*, No. 13-0150, 2015 WL 6743948, at *2 (W.D. Pa. Nov. 4, 2015); *Kline v. Archuleta*, 309 F.R.D. 91, 93 (D.D.C. 2015), *aff'd sub nom. Kline v. Cobert*, No. 15-5248, 2016 WL 1272945 (D.C. Cir. Feb. 10, 2016); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 762 F. Supp. 2d 710, 717 n.4 (D. Del. 2011), *vacated on other grounds*, 711 F.3d 1348 (Fed. Cir. 2013); *FINOVA Capital Corp. v. Richard A. Arledge, Inc.*, 2007 WL 1965335, at *2 (D. Ariz. July 2, 2007).

PROLACTO has certainly had many opportunities to raise the incontestability issue. PLM filed the Section 15 affidavits on November 21, 2014 and the USPTO issued acknowledgments on December 12, 2014. *See* 1st Anderson Decl., Exs. A–D. Since those dates, the relevant documents have been publicly available on the USPTO website. Furthermore, PLM repeatedly raised the incontestability of the marks. First, PLM indicated in the parties' joint pretrial statement that its Indian Girl with Cone design registration was incontestable.[21] *See* Parties' Joint Pretrial Statement at 14, ECF No. 182.

---

[21] The Court notes that the chart in the pretrial statement indicates that PLM's Indian Girl with Cone mark is incontestable, but, confusingly, it does not include the same information for PLM's Indian Girl with Paleta mark. *See* Parties' Joint Pretrial Statement at 14, ECF No. 182.

Second, PLM's proposed findings of fact and conclusions of law also make multiple references to incontestability.  The very first page of PLM's post-trial brief states that LA INDITA MICHOACANA "was the third U.S. Trademark Registration that PLM obtained: the USPTO issued the first two several years before, which have since become incontestable." PLM's Post-Trial Brief at 1.  A table depicts both of the purportedly incontestable marks, as well as the date that USPTO acknowledged the Section 15 affidavits.  PLM's Post-Trial Brief at 1. Later in the same brief, PLM again includes a chart depicting the two marks and labeling them "[i]ncontestable as of 12/12/2014."  PLM's Post-Trial Brief ¶ 155.  The next paragraph states in full: "PLM (Sub), Inc. is the current owner and registrant of PLM's three registered marks shown above, two of which, namely Reg. Nos. 2,905,172, and 2,968,652, became incontestable on December 12, 2014."  PLM's Post-Trial Brief ¶ 156.  PROLACTO's reply brief states that it "does *not* dispute" the conclusions of either paragraph 155 or 156.  *See* Def.'s Reply & Opp'n Pls.' [Proposed] Findings of Fact & Conclusions of Law ("PROLACTO's Post-Trial Reply") ¶¶ 155–56, ECF No. 315 (emphasis added).

PLM's post trial brief also includes legal argument on the effect of the purportedly incontestable registered marks.  *See* PLM's Post-Trial Brief ¶¶ 167–71.  In the midst of several paragraphs of argument, PLM asserts that "[b]oth of these Indian Girl Design marks are conclusively presumed to be distinctive, and thus, cannot be challenged as being merely descriptive or lacking secondary meaning."  PLM's Post-Trial Brief ¶ 169.  PROLACTO responds simply that it "disputes Plaintiff's Conclusion Nos. 167–170" and "Conclusion Nos. 171–172."  PROLACTO's Post-Trial Reply ¶¶ 167–68.  That threadbare assertion certainly did not raise the incontestability argument that PROLACTO brings forward now.  In fact, PROLACTO does not point to anywhere in this drawn-out litigation where it challenged the

incontestability of PLM's Indian Girl marks on the grounds it relies on now.  A search of

PROLACTO's post-trial briefing reveals a lone paragraph that uses the terms "incontestable" or

"incontestability," and that paragraph addresses the incontestability of one of PROLACTO's

own marks.  *See* Def.'s Proposed Findings of Fact and Conclusions of Law ¶ 19, ECF No. 311.

In response to PLM's waiver argument, PROLACTO cites only Rule 52(a)(5) and a

single D.C. Circuit decision, *In re Sealed Case*, 552 F.3d 841, 850 (D.C. Cir. 2009).[22]  Rule

52(a)(5) states that a party "may later question the sufficiency of the evidence supporting the

findings, whether or not the party requested findings, objected to them, moved to amend them, or

moved for partial findings."  Fed R. Civ. P. 52(a)(5).  The problem with PROLACTO's

argument is that it is not truly attacking the sufficiency of the evidence.  Instead, PROLACTO is

making a legal argument about whether PLM met the standards required for a Section 15 affidavit.

Furthermore, PROLACTO's argument that "no evidence regarding the purported

incontestability of the Indian Girl Designs was timely or properly introduced into evidence"

misses the mark.  *See* PROLACTO's Mot. Amend at 5.  The Court made clear that it took

"judicial notice throughout [its Findings of Fact and Conclusions of Law] of information

regarding federal trademark registrations that is publicly available through the USPTO's

Trademark Status & Document Retrieval Database."[23]  *PLM VI*, 188 F. Supp. 3d 22, 43 n.13

---

[22] PROLACTO argues that this case stands for the proposition that Rule 52(a)(5) "allows a party to make [a sufficiency of the evidence] challenge as an initial matter in the appellate court without ever having raised the issue in the trial court."  Def.'s Reply Supp. Mot. Amend Findings & Amend the Judgment at 4, ECF No. 356.  That may be true, but it does not follow that PROLACTO can raise its incontestability argument on reconsideration despite numerous decisions stating that a motion under Rule 52(b) or 59(e) is not an avenue to advancing new theories or arguments for the first time.

[23] PROLACTO takes issues with the Court's taking judicial notice of these records.  *See* PROLACTO's Mot. Amend. 5 n.1.  PROLACTO also made a slightly more developed, but substantially identical argument in its opposition to PLM's motion to amend.  *See* PROLACTO's Opp'n Mot. Amend at 12.  PROLACTO relies on two cases from the Fifth Circuit and one from

(D.D.C. 2016).  The public records show that PLM filed a Section 15 incontestability affidavit for each of the Indian Girl marks at issue and that USPTO acknowledged those affidavits.

At this late stage in the litigation, PROLACTO cannot raise a new legal argument attacking the validity of those affidavits.  Aside from its reference to Rule 52(a)(5) and *In re Sealed Case*, PROLACTO has not put forward any other authority confronting the rule that a Rule 52(b) motion is not a "second opportunity . . . to advance new theories by moving to amend a particular finding of fact or conclusion of law."  *Salazar*, 685 F. Supp. 2d at 75 (quoting 9C Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2582 (3d ed. 2009)).  Nor has PROLACTO explained why its motions should avoid the rule that "an issue presented for the first time in a motion pursuant to Federal Rule of Civil Procedure 59(e) generally is not timely raised."  *Doe*, 611 F.3d at 896 (quoting *Holland*, 181 F.3d at 605).

The Court finds that PROLACTO has waived its argument regarding the purported incontestability of PLM's two Indian Girl marks.  Therefore, the Court will deny PROLACTO's motion.[24]

---

the Second Circuit, but none of the cases involves documents publicly filed with and maintained by the USPTO.  *See* PROLACTO's Mot. Amend. 5 n.1 (citing *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70–71 (2d Cir. 1998); *Colonial Leasing Co. of New England v. Logistics Control Grp. Int'l*, 762 F.2d 454, 461 (5th Cir. 1985), *on reh'g sub nom. Colonial Leasing of New England, Inc. v. Logistics Control Int'l*, 770 F.2d 479 (5th Cir. 1985); *Fireman's Fund Ins. Co. v. Wilburn Boat Co.*, 259 F.2d 662, 664 (5th Cir. 1958)).  The Second Circuit decision in *International Star Class Yacht Racing*, for instance, involved a district court that "relied on statements of fact contained in its 1992 . . . opinion to establish prevailing trademark search practices."  146 F.3d at 70.  In truth, many courts have applied the standard of Federal Rule of Evidence 201(b)(2) and determined that it would be appropriate to take judicial notice of publicly-available records maintained by the USPTO.  *See, e.g.*, *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 705 n.5 (3d Cir. 2004); *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 n.27 (Fed. Cir. 1993); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 514 n.3 (Fed. Cir. 1990); *Vitek Sys., Inc. v. Abbott Labs.*, 675 F.2d 190, 192 n.4 (8th Cir. 1982).

[24] Because the Court finds that PROLACTO has waived its objection to the incontestability of PLM's Indian Girl registrations, the Court does not reach the merits of that argument.

# V.  PROLACTO'S MOTION FOR A NEW TRIAL

Next, the Court turns to PROLACTO's motion for a new trial pursuant to Federal Rule of Civil Procedure 59(b).  *See generally* PROLACTO's Mot. New Trial.  PROLACTO argues that PLM's registration and use of the domain name "laflordemichoacan.com" constitutes "newly discovered evidence of PLM's bad faith, unfair competition, and infringement."  PROLACTO's Mot. New Trial at 2.  PLM responds that the Court should not grant a new trial because PROLACTO could have found the evidence before trial, because PROLACTO presents the domain name only as impeachment evidence, and because the new evidence would not change the outcome of this case.  *See* Pls.' Opp'n Def.'s Mot. for New Trial ("PLM's Opp'n Mot. New Trial") at 1–2, ECF No. 354.  Because the Court finds that the newly presented evidence would not change the outcome of the case, the Court will deny PROLACTO's motion for a new trial.

## A.  Legal Standard

Federal Rule of Civil Procedure 59(a)(2) permits a court, on a motion for a new trial after a nonjury trial, to "open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment."  Fed. R. Civ. P. 59(a)(2).  A parties' motion Under Rule 59(a) to "reopen the trial record to submit additional proof 'is addressed to [the court's] sound discretion.'"  *Ashraf-Hassan v. Embassy of France*, 185 F. Supp. 3d 94, 112 (D.D.C. 2016) (alteration in original) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331 (1971)).

The purpose of Rule 59 is not "relitigating old issues . . . or otherwise taking a 'second bite at the apple."  *Ashraf-Hassan*, 185 F. Supp. 3d at 112 (quoting *Barnes v. Alves*, 304 F.R.D. 363, 366–67 (W.D.N.Y. 2015)).  Furthermore, "[m]otions for a new trial are generally

disfavored, and should only be granted with great caution." *Ashraf-Hassan*, 185 F. Supp. 3d at

113 (quoting *Chavez v. City of Albuquerque*, 640 F. Supp. 2d 1340, 1343 (D.N.M. 2008)).

Rule 59(a)(1)(B) makes clear that a court may grant a new trial, "after a nonjury trial, for

any reason for which a rehearing has heretofore been granted in a suit in equity in federal court."

Fed. R. Civ. P. 59(a)(1)(B).  Among other reasons, a court may grant a new trial following "the

discovery of important new evidence."  *Ashraf-Hassan*, 185 F. Supp. 3d at 112 (quoting *Azevedo

v. Hous. Auth. of City of Sarasota*, 147 F.R.D. 255, 257 (M.D. Fla. 1993)); *see also Nyman v.

FDIC*, 967 F. Supp. 1562, 1569 (D.D.C. 1997) ("Motions for a new trial 'must clearly establish

either a manifest error of law or fact or must present newly discovered evidence.'" (quoting

*FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986))).

To show that newly discovered evidence requires a new trial, the moving party must

establish that:

> (1) the newly discovered evidence [is] of facts that existed at the time of trial or
> other dispositive proceeding, (2) the [party seeking relief] must have been
> justifiably ignorant of [the evidence] despite due diligence, (3) the evidence must
> be admissible and of such importance that it probably would have changed the
> outcome, and (4) the evidence must not be merely cumulative or impeaching.

*Lightfoot v. District of Columbia*, 555 F. Supp. 2d 61, 68 (D.D.C. 2008) (alterations in original)

(quoting *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001)).[25]

---

[25] *Lightfoot* describes the standard under Rule 60(b) for vacating a judgment due to newly
discovered evidence.  *See* 555 F. Supp. 2d at 68.  But the standards for relief under Rules 60(b)
and 59(a) are the same.  *See Compass Technology, Inc. v. Tseng Laboratories, Inc.*, 71 F.3d
1125, 1130 (3d Cir. 1995); *see also* 11 Charles Wright & Arthur Miller, *Federal Practice &
Procedure* § 2808 (3d ed. 2016).

**B.  Analysis**

1.  The "laflordemichoacan.com" Domain Name

The Court has previously found that PROLACTO owns two registered trademarks that include the phrase "La Flor De Michoacan."  *PLM VI*, 188 F. Supp. 3d 22, 66 (D.D.C. 2016) (identifying U.S. Reg. Nos. 2,830,401 and 3,249,113).  PROLACTO filed its application for the first of the two marks (U.S. Registration No. 2,830,401) with the USPTO on April 18, 2001, and the mark was registered on April 6, 2004 and became "incontestable" pursuant to 15 U.S.C. § 1065 on July 30, 2009.  *Id.*  PROLACTO filed its application for the second mark (U.S. Registration No. 3,249,113) on December 8, 2005, and the mark was registered on June 5, 2007.  *Id.*

During the TTAB proceedings that preceded this action, both marks that included the words "La Flor De Michoacan," were placed on the record.  *See Productos Lacteos Tocumbo S.A. De C.V. v. Paleteria La Michoacana, Inc.*, 98 U.S.P.Q.2d 1921, 2011 WL 2161071, at *2, *8 (T.T.A.B. 2011).  On May 20, 2011, the TTAB found that PROLACTO "has priority of use with respect to . . . the mark[] . . . LA FLOR DE MICHOACAN."  *Id.* at *11.  PROLACTO has produced a commercial report showing that, less than two months later, Ignacio Gutierrez registered the domain name "laflordemichoacan.com" on behalf of Paleteria La Michoacana, Inc. *See* PROLACTO's Mot. New Trial, Decl. of Stephen Anderson ("2d Anderson Decl.") ¶¶ 5–6, ECF No. 345-1; 2d Anderson Decl., Ex. B at 3–4.  The same report shows that the domain name was redirecting internet users to "ytupaleta.com," which is the homepage for PLM's website.  *See* 2d Anderson Decl. ¶ 7; 2d Anderson Decl., Ex. B at 43.  PROLACTO has also presented evidence from the Internet Archive's WayBack Machine that appears to show that "laflordemichoacan.com" redirected to "ytupaleta.com" from at least June 3, 2013 through March 4, 2016.  *See* 2d Anderson Decl. ¶ 8; 2d Anderson Decl., Ex. C.

PROLACTO states that it became aware of the domain name after reviewing PLM's

motion to substitute PLM Operations as the sole Plaintiff in this case.  *See* PROLACTO's Mot.

New Trial at 5–6 (citing PLM Mot. Sub.).  The declaration of Mr. Robert Spigner accompanying

PLM's motion for substitution stated that PLM (Sub) "sold substantially all of its assets" to PLM

Operations, and that the transaction was memorialized "in the Bill of Sale, General Assignment

and Conveyance" attached to Mr. Spigner's declaration.  *See* Spigner Decl. ¶ 3.  Schedule 1 to

the Bill of Sale, General Assignment and Conveyance sets forth the assets being transferred, and

Annex D to that list includes various domain names including "laflordemichoacan.com."  *See*

Spigner Decl., Ex. B, schd. 1, annex D.

After PROLACTO raised this issue with PLM, PROLACTO states that it found the

domain name had been "parked" and that it no longer transferred users to "ytupaleta.com."  *See*

2d Anderson Decl. ¶ 12.  On June 23, 2016, counsel for PLM informed PROLACTO that PLM

would transfer the domain name to PROLACTO.[26]  *See* 2d Anderson Decl. ¶ 12; *see also* PLM's

Opp'n Mot. New Trial, Decl. of Laura L. Chapman ("Chapman Decl.") ¶ 2, ECF No. 354-1;

Chapman Decl., Ex. A, ECF No. 354-2.

## 2.  Bad Faith

PROLACTO's core contention is that PLM's registration of the "laflordemichoacan.com"

domain name is evidence of bad faith.  PROLACTO relies on two cases from New York to

---

[26] In its opposition to PROLACTO's motion for a new trial, PLM does not dispute these basic facts.  *See* PLM's Opp'n Mot. New Trial at 2–5.  PLM's recitation of the relevant facts focuses on other issues, such as whether PROLACTO investigated the domain name, whether the internet plays a role in PROLACTO's advertising, whether PROLACTO asked PLM to stop using the domain name, and whether consumers accessed the domain name or PLM's "ytupaleta.com" website.  PLM's Opp'n Mot. New Trial at 2–5.  Because the Court will deny PROLACTO's motion for a new trial on the basis that the newly discovered evidence would not change the outcome of the case, the additional facts put forth by PLM are irrelevant.

support its argument.  First, PROLACTO cites *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.* for the principle that an "inquiry into . . . bad faith 'considers whether the defendant adopted its mark with the intention of capitalizing on the plaintiff's reputation and goodwill and on any confusion between his and the senior user's product." 440 F. Supp. 2d 249, 278 (S.D.N.Y. 2006) (quoting *Savin Corp. v. Savin Group*, 391 F.3d 439, 60 (2d Cir. 2004)). *De Beers* specifically states that "the choice of Internet domain names" seeking to capitalize on name recognition and goodwill may be evidence of bad faith. *Id.*  Second, PROLACTO cites *Aztar Corp. v. NY Entertainment, LLC*, for the principle that use of an infringing name after the party has notice of a trademark owner's use of the original mark "evidence[s] bad faith.'" 15 F. Supp. 2d 252, 260 (E.D.N.Y. 1998), *aff'd sub nom. Collins v. Aztar Corp.*, 210 F.3d 354 (2d Cir. 2000).

PROLACTO argues that PLM was well aware of PROLACTO's two marks that included the words "La Flor De Michoacan" because of the TTAB proceeding, but that PLM nevertheless registered the domain name "laflordemichoacan.com" and diverted internet traffic to its own website.  *See* PROLACTO's Mot. New Trial at 8.  PROLACTO reasons that it would be "difficult to envision a scenario in which PLM acquired this domain name for any reason other than bad faith."  PROLACTO's Mot. New Trial at 8.  In response, PLM briefly argues that the cases PROLACTO relies upon "do not apply," because the cases concerned a junior user, meaning "the party who was second-in-time to use the disputed mark."  PLM's Opp'n Mot. New Trial at 11.  PLM argues that the Court's previous consideration of this issue means the issue of bad faith is inapplicable and that the existence of the domain name "does not change the outcome of the case."  PLM's Opp'n Mot. New Trial at 11.  At this stage of the litigation, the relevant

question is not whether the domain name is evidence of bad faith, but whether the domain name

entitles PROLACTO to a new trial under the standards of Federal Rule of Civil Procedure 59(a).

 3.   The Newly Discovered Evidence Cannot be Used for Impeachment Purposes

PROLACTO appears to argue that PLM's purported bad faith requires a new trial

because it calls into question testimony presented by PLM.   *See* PROLACTO's Mot. New Trial

at 8.   For instance, PROLACTO suggests that the new evidence "shines a more discriminating

light on the credibility of PLM and the Gutierrez brothers, whose testimony led the Court to

believe that the Gutierrez brothers did not exhibit bad faith."   PROLACTO's Mot. New Trial at

8.   In other words, PROLACTO believes that "the Court decided to view all of the Gutierrez

brothers' actions as innocent and taken in good faith," but that this evidence could cause the

Court to reconsider its evaluation.   PROLACTO's Mot. New Trial at 9.

As PLM correctly points out, a court should not grant a new trial because of new

evidence that is "merely cumulative or impeaching."   *Lightfoot v. District of Columbia*, 555 F.

Supp. 2d 61, 68 (D.D.C. 2008) (quoting *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370,

392 (2d Cir. 2001)); *see also Freedom Watch, Inc. v. U.S. Dep't of State*, No. 14-1832, 2016 WL

6155928, at *2 (D.D.C. Oct. 21, 2016) (quoting *Lightfoot* and using same standard); *Shafiiq v.

Obama*, 951 F. Supp. 2d 13, 17 (D.D.C. 2013) (same).   PROLACTO does not dispute this

longstanding rule, arguing instead that the credibility of witness testimony "is not the focus of

PROLACTO's request for a new trial."   *See* Def.'s Reply to Pls.' Opp'n to Def.'s Mot. for New

Trial ("PROLACTO Reply Supp. Mot. New Trial") at 13, ECF No. 357.

Nevertheless, an element of PROLACTO's argument for a new trial appears to rely on

undermining the testimony of the Gutierrez brothers.   For instance, PROLACTO argues that the

domain name "shines a more discriminating light on the credibility of PLM and the Gutierrez

brothers" and consideration of the new evidence could cause the court to reconsider its decision

to "view all of the Gutierrez brothers' actions as innocent and taken in good faith."

PROLACTO's Mot. New Trial at 8–9.  Using the domain name for that purpose would fall under

the classic definition of impeachment.  *See Impeachment*, *Black's Law Dictionary* (10th ed.

2014) (defining impeachment in this context to mean "[t]he act of discrediting a witness").

Newly discovered evidence does not entitle a party to a new trial when it is merely cumulative or

impeaching, and the Court will not grant a new trial for evidence of the domain name to be used

for that purpose.

### 4.  The Newly Discovered Evidence Would Not Change the Outcome

But PROLACTO's argument is broader than simply calling into question the credibility

of particular witnesses.  PROLACTO posits that PLM's registration and use of the domain name

"further highlights PLM's wide-spread pattern of bad faith with respect to PROLACTO's

marks."  PROLACTO's Mot. New Trial at 8.  In other words, PROLACTO believes that the

additional evidence would cause the Court to reevaluate its entire analysis of the evidence and

arguments on the bad faith issue.  PROLACTO concludes that the domain name "goes to the

issue of bad faith, a core issue in multiple claims in this litigation, and such a finding of bad faith

would alter the outcome in this case."  PROLACTO Reply Supp. Mot. New Trial at 13.

The parties' arguments both attempt to parse the Court's prior decision on the issue of

bad faith.  PLM argues briefly that the Court previously decided that "the issue of bad faith is

'entirely inapplicable to PLM's adoption of its marks' because PLM is the national senior user of

'La Michoacana' and an Indian Girl, and PROLACTO is the junior user."  PLM's Opp'n Mot.

New Trial at 11 (quoting *PLM VI*, 188 F. Supp. 3d 22, 88 (D.D.C. 2016)).  PROLACTO argues

that PLM "has blatantly mischaracterized" the Court's reasoning, and that the Court "did not

broadly determine that PLM's bad faith could not be considered and impactful in this case."
PROLACTO Reply Supp. Mot. New Trial at 9–10. Thus, the Court will begin by restating its
prior holding on the bad faith issue.

After examining the parties' arguments and the relevant case law in detail, the Court
determined that, if it was "to hold that PLM was not entitled to any rights in its marks on the
basis of bad faith, despite the fact that it was first to use its marks in the United States, it would
appear that the Court would be the first to do so in the history of American trademark law."
*PLM VI*, 188 F. Supp. 3d at 91. The Court noted that it was "dubious of the legal validity" of
PROLACTO's argument. *Id.* Nevertheless, the court assumed—without deciding—that the
theory was valid, and found that PROLACTO failed to show that the legal theory was applicable
to the facts on the record. *Id.* The Court articulated the novel theory of bad faith in the
following way:

> [I]f a party adopts a mark in the United States that has been previously used in a
> foreign country and engages in various forms of advertising with the intention of
> benefitting from the foreign user's goodwill and reputation by deceiving
> consumers as to the true origin of its products—even if the foreign user has never
> used the mark in commerce in the United States and even if the foreign mark does
> not meet the requisite level of "fame" under the famous mark doctrine—then the
> party cannot obtain rights to the mark.

*Id.* Based on the evidence on the record, the Court found that the assumed theory was
inapplicable. Specifically, the Court reached the following conclusion:

> The Court has found that although the Gutierrez brothers adopted the name "La
> Michoacana" because they had seen the name in Mexico, they did not believe that
> the term denoted a single source of product in Mexico. The Court has also found
> that, in the United States, the name does not, in fact, denote a single source of
> product. The Court has found that although Ignacio Gutierrez copied PLM's
> Indian Girl mark from similar marks that he had seen in Mexico and adopted it
> because he thought PLM's target consumers would recognize the mark, he did not
> believe that, in Mexico, the mark denoted a single source of product, but, rather,
> believed that the mark was used indiscriminately by a variety of paleterias in
> Mexico. The Court has also found that although Ignacio Gutierrez adopted the
> Tocumbo Statement because he had seen similar, if not identical, language on

packaging in Mexico, he believed that various, separately-owned paleterias in Mexico used the language on their product packaging even though it was not literally true as applied to each of them.  Finally, the Court also found the absence of any credible evidence that any of PLM's advertising statements at issue influenced consumers' decisions to purchase or not purchase PLM's products or caused consumers to falsely believe that PLM's products were actually PROLACTO's products.

*Id.*

The Court now finds that PROLACTO's legal theory would be inapplicable, even with the addition of the newly discovered domain name evidence.  Crucially, PLM did not register the domain name "laflordemichoacan.com" until after the TTAB proceeding that preceded this action.  *See* 2d Anderson Decl. ¶¶ 5–6; 2d Anderson Decl., Ex. B at 3–4.  The Court's prior analysis, which was based on comprehensive findings of fact following the review of extensive testimony and documentary evidence, turned on the fact that the Gutierrez brothers did not believe that the marks in question denoted any particular source of product in Mexico at the time they adopted the marks in the United States.  *See PLM VI*, 188 F. Supp. 3d at 91.  The registration of the domain name occurred long after those decisions were made and would have no impact on the Court's factual findings with regard to the Gutierrez brothers' earlier knowledge or intentions.  Nor can the evidence be used to suggest that the Gutierrez brothers are generally untrustworthy or unethical.  As the Court has previously noted, a new trial should not be granted where the use of newly discovered evidence is to impeach or undermine the credibility of a witness.  *See supra* Part V.B.3.  Thus, because the Court finds that the newly discovered evidence of the "laflordemichoacan.com" domain name would not change the outcome of the case, the Court will deny PROLACTO's motion for a new trial.[27]  *See Lightfoot*, 555 F. Supp. 2d at 68.

---

[27] Because the Court finds that evidence of the domain name would not change the outcome of the case, the Court need not address the parties arguments regarding whether

## VI. PROLACTO'S BILL OF COSTS

Finally, the Court turns to the bill of costs that PROLACTO filed on June 17, 2016.  *See generally* PROLACTO's Bill of Costs.  PLM presents several reasons why the Court should deny PROLACTO's request for costs.[28]  *See generally* PLM's Opp'n Bill of Costs.  Because of the mixed nature of the judgment in this case, the Court will exercise its discretion to require each party to bear its own costs.

### A.  Legal Standard

Federal Rule of Civil Procedure 54 governs the allocation of costs in federal court.  *See* Fed. R. Civ. P. 54(d)(1).  Under Rule 54(d), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  *Id.*  The Lanham Act explicitly contemplates an award of costs.  *See* 15 U.S.C. § 1117(a).

A prevailing party is "one who has been awarded some relief by a court."  *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001).  The D.C. Circuit has articulated a three-part test for determining prevailing-party status: "(1) there must be a 'court-ordered change in the legal relationship' of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief."  *District of Columbia v. Straus*, 590 F.3d 898, 901 (D.C. Cir. 2010) (quoting

---

PROLACTO was "justifiably ignorant of [the evidence] despite due diligence."  *Lightfoot*, 555 F. Supp. 2d at 68 (alteration in original) (quoting *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001)).  Nor does the Court reach PLM's alternative arguments that evidence of the domain name would not change the outcome because PROLACTO has not sought injunctive relief and the "issue of monetary damages was adjudicated on summary judgment in favor of PLM."  PLM's Opp'n Mot. New Trial at 12.

[28] Under Federal Rule of Civil Procedure 54(d)(1), the "clerk may tax costs on 14 days' notice."  Fed. R. Civ. P. 54(d)(1).  A party may file a motion to review the clerk's action.  *Id.*  The Court will construe PLM's opposition and objections to PROLACTO's bill of costs as a motion under that rule.

*Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 492–93 (D.C. Cir. 2003)).  A party need not prevail

on every claim to be the prevailing party for the purposes of allocating costs.  A party who is

only partially successful can be deemed the prevailing party.  *See* 10 Charles Wright & Arthur

Miller, *Federal Practice & Procedure* § 2667 (3d ed. 2016).  In fact, the prevailing party is "one

who succeeds 'on *any significant issue* in litigation which achieves some of the benefits [they]

sought in bringing suit.'"  *Stanley v. Proctor*, 591 F. Supp. 2d 12, 14–15 (D.D.C. 2008)

(emphasis added) (alteration in original) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433

(1983)); *see also Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782,

791–92 (1989); *Lopez v. District of Columbia*, 383 F. Supp. 2d 18, 22 (D.D.C. 2005).

Rule 54 imposes a presumption in favor of awarding costs to the prevailing party.  *See*

*Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1107–08 (D.C. Cir. 1985).  The D.C.

Circuit has held that a district court must articulate a good reason for deviating from that general

rule.  *See Baez v. U.S. Dep't of Justice*, 684 F.2d 999, 1004 (D.C. Cir. 1982) (en banc) (per

curiam).  Nevertheless, the apportionment of costs is in the discretion of the district court, and

the "award of costs to the prevailing party is not automatic."  *Moore*, 762 F.2d at 1107; *see also*

*C & E Servs., Inc. v. Ashland Inc.*, 601 F. Supp. 2d 262, 279 (D.D.C. 2009) (noting discretion).

## B. Analysis

PROLACTO filed its bill of costs on June 17, 2016.  *See* PROLACTO's Bill of Costs at

1.  PROLACTO seeks a total of $75,177.02 in costs.  *See* PROLACTO's Bill of Costs at 1.

Among other categories of purported costs, PROLACTO seeks $32,225.23 for transcript fees,

$29,352.02 in witness fees, and $7,000 in interpreters' fees.  PROLACTO's Bill of Costs at 1.

PROLACTO states that, because of "the intertwined nature of the counts and counterclaims," it

is submitting all costs that it incurred, but that it "recognizes there is likely to be an

apportionment based on the Court's findings on the claims at issue."  PROLACTO's Bill of

Costs at 3.  PLM raises a number of arguments in response.  *See generally* PLM's Opp'n Bill of

Costs.  PLM argues that PROLACTO's bill of costs is premature, that PLM—not

PROLACTO—is the prevailing party, that PROLACTO is not entitled to the specific costs it

seeks, and that the Court should exercise its discretion to deny any costs to PROLACTO.  *See*

*generally* PLM's Opp'n Bill of Costs.  Because of the mixed nature of the judgment in this case,

the Court will exercise its discretion to require each party to bear its own costs.

In short, both PROLACTO and PLM argue that they are the prevailing party in this

litigation.  Both arguments have merit.  PROLACTO argues that it "has prevailed on the central

issue in this litigation."  Def.'s Reply to Pls.' Opp'n & Objections to Bill of Costs

("PROLACTO's Reply Supp. Bill of Costs") at 7, ECF No. 352.  Specifically, PROLACTO

states that PLM brought this suit for the sole purpose of overturning the TTAB's cancellation of

PLM's trademark, but the Court affirmed the TTAB decision.  *See* PROLACTO's Reply Supp.

Bill of Costs at 7; *see also PLM VI*, 188 F. Supp. 3d 22, 101 (D.D.C. 2016); Order ¶ 1, ECF No.

338 (entering judgment in favor of PROLACTO on Count I).  Certainly, a district court may

exercise its discretion to award costs to a defendant that "los[es] on a counterclaim, [but]

succeeds in warding off a predominant claim."  *Ira Green, Inc. v. Military Sales & Serv. Co.*, 775

F.3d 12, 28 (1st Cir. 2014); *see also Sci. Holding Co. v. Plessey Inc.*, 510 F.2d 15, 28 (2d Cir.

1974) (Friendly, C.J.) ("District courts have held that a defendant who successfully fends off a

large claim may be awarded costs despite failure to prevail on a counterclaim.").

On the other hand, PLM argues that it prevailed on "every issue on summary judgment

on which a claim for relief was completely adjudicated" and that, following trial, "judgment has

been entered in favor of PLM on every remaining count" except for Count I of the Complaint.

*See* PLM's Opp'n Bill of Costs at 1–2.  PLM also correctly notes that the Court granted

permanent injunctive relief enjoining PROLACTO from using the Indian Girl design in Northern

California and Houston, Texas.  *See* PLM's Opp'n Bill of Costs at 2; *see also PLM VI*, 188 F.

Supp. 3d at 120 ("[T]he Court will limit the geographic scope of its injunction to the specific

markets in which it has found infringement: Northern California . . . and the Houston, Texas

area . . . ."); Order at 2–3.  The Court has no doubt that the permanent injunction is a form of

judicial relief in PLM's favor that alters the legal relationship between the parties.  *See District*

*of Columbia v. Straus*, 590 F.3d 898, 901 (D.C. Cir. 2010) (setting forth the three-part test to

determine the prevailing party).

The mixed nature of the judgment in this case raises a problem for the Court in

determining the prevailing party.  Both parties have at least some claim that they are the winner.

Faced with similar facts, other courts in this district have taken a Solomonic approach and

exercised their discretion to order that each party should bear its own costs.  *See Bell Helicopter*

*Textron Inc. v. Airbus Helicopters*, No. 10-0789, 2015 WL 1395894, at *2 (D.D.C. Mar. 25,

2015) ("[T]he mixed nature of the judgment here provides grounds for requiring each party to

bear its own costs."); *C & E Servs.*, 601 F. Supp. 2d at 280 (declining to determine a prevailing

party or award costs because the parties were "nearly in equipoise").

One of those decisions noted that the D.C. Circuit does not appear to have considered this

practice.  *See Bell Helicopter*, 2015 WL 1395894, at *2.  But several other circuits have

approved of the idea that a district court may decline to award costs where the parties each

prevailed on different elements of a mixed judgment.  *See, e.g.*, *Barber v. T.D. Williamson, Inc.*,

254 F.3d 1223, 1234–35 (10th Cir. 2001) (collecting cases where courts declined to award costs

because neither side prevailed or because both sides prevailed); *Ruiz v. A.B. Chance Co.*, 234

F.3d 654, 670 (Fed. Cir. 2000) (affirming a decision not to award costs where one side

"prevailed on the patent invalidity issue, but [the other] prevailed on all of the other issues,

including the non-patent issues"); *Testa v. Village of Mundelein*, 89 F.3d 443, 447 (7th Cir.

1996) ("Considering the mixed outcome of the civil rights and malicious prosecution claims, the

decision requiring each party to bear its own costs is within that discretion."); *Amarel v. Connell*,

102 F.3d 1494, 1523 (9th Cir. 1996) ("In the event of a mixed judgment . . . it is within the

discretion of a district court to require each party to bear its own costs."); *see also* 10 Charles

Wright & Arthur Miller, *Federal Practice & Procedure* § 2668 (3d ed. 2016) (noting that the

denial of costs to both sides "has been considered appropriate when neither side entirely

prevailed or when both sides prevailed").  In light of the mixed judgment, the Court will deny

costs to both parties.  PLM and PROLACTO will bear their own costs in this litigation.[29]


## VII.  CONCLUSION

For the foregoing reasons, PLM's Motion to Substitute and Join Successor in Interest

(ECF No. 336) is **GRANTED**; PLM's Motion to Amend the Judgment (ECF No. 340) is

**DENIED**; PROLACTO's Motion for a New Trial (ECF No. 345) is **DENIED**; PROLACTO's

Motion to Amend Findings and to Amend the Judgment (ECF No. 346) is **DENIED**; PLM's

Opposition and Objections to PROLACTO's Bill of Costs (ECF No. 350), construed as a motion

---

[29] In its response to PROLACTO's bill of costs, PLM argues that it has the right to file its own bill of costs "within 21 days after the Court rules on all of the post-trial motions currently pending."  PLM's Opp'n Bill of Costs at 2 n.3.  PROLACTO argues that its bill of costs was timely, but that any bill of costs filed by PLM would be untimely.  *See* PROLACTO's Reply Supp. Bill of Costs at 8–10.  The Court does not need to address this timeliness question.  Both parties have had a sufficient opportunity to argue that they are the prevailing party in this litigation.  *See* PLM's Opp'n Bill of Costs at 1–2; PROLACTO's Reply Supp. Bill of Costs at 6–8.  Because the Court has determined that it will exercise its discretion to require each party to bear its own costs based on the mixed judgment, there is no need to consider PLM's potential bill of costs or the arguments raised in connection to the specific costs claimed by PROLACTO.

under Federal Rule of Civil Procedure 54(d)(1), is **GRANTED**; PROLACTO's Motion for

Leave to File Surreply (ECF No. 351) is **GRANTED IN PART** and **DENIED IN PART**; and

PROLACTO's Request for Hearing (ECF No. 358) is **DENIED**.  An order consistent with this

Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 30, 2017                                    RUDOLPH CONTRERAS
                                                         United States District Judge